EMIL A. KOSMAK, Appellant, v. THE MAYOR, ALDER- MEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

53   329
117a  361

*Permit to enter a private drain — the owner acts at his own risk — power of a city to make a private drain a public one — the city not liable for a drain used by it as a private owner — examination of a witness as to statements made by him.*

One Kosmak, who was the lessee of the premises known as Nos. 13 and 15 Chatham street, in the city of New York, which he occupied as a restaurant and liquor saloon, brought an action against the city of New York, to recover damages for a nuisance committed by it, upon the aforesaid premises, by causing the refuse and contents of a sewer situated in Frankfort street, in the said city, to be emptied thereon. Upon the trial it was proven that the plaintiff occupied the premises, known as No. 15 Chatham street, during the periods mentioned in the complaint; that a public sewer had been constructed in Frankfort street, from the corner of Frankfort and Chatham streets, towards the East river; that, on the 13th day of October, 1857, upon the application of the owner of the house No. 17 Chatham street, a permit was issued to her to construct a private drain from said house, through Chatham street, to connect with the sewer in Frank- fort street. The said drain passed the premises of the plaintiff and connected with the Frankfort street sewer, on its northerly side, at a point some distance from the corner of Chatham street.

In October, 1880, a permit was issued, on the application of the then owner of the plaintiff's premises, to open the street for the purpose of making connection with this private drain, the applicant being told by the permit clerk that there was no public sewer in Chatham street; that the property No. 17 Chatham street had been taken by the Brooklyn bridge, and that no permission to use the drain would be given unless with the permission of the bridge officials. This permission having been procured by the applicant a permit was given, the applicant being told that if he went in there he went at his own risk, as the city officials did not know anything about it and did not have anything to do with it. The plaint- iff fitted up the premises, and subsequently, in February, 1881, and on several occasions thereafter, sewer refuse ran into the plaintiff's premises, through the connection which had been made with the drain, and his property was injured. In October, 1883, a public sewer was built in Chatham street.

Upon the trial the jury were instructed that if the drain in Chatham street was obstructed, and the difficulty arose from that fact, the city was not responsible; whereas, if the jury found that the obstruction was in the Frankfort street sewer the public authorities had not performed their duty and they became responsible for the overflow.

*Held,* that the charge was correct.

The plaintiff offered to show that the premises No. 17 Chatham street, to which this drain was an appurtenance, had been conveyed by the owner thereof to the

trustees of the Brooklyn bridge, and that such trustees had, by carrying into this sewer the water from the bridge, overcharged this drain, and that this was one of the causes of the overflow, claiming that the bridge trustees were the joint agents of the two cities of Brooklyn and New York, and that the city of New York was responsible for the damages occasioned by such action on the part of the trustees.

*Held*, that there were two answers to this claim:

*First.* That the plaintiff had alleged no such cause of action.

*Second.* That the damage which the plaintiff suffered arose from the connection which he had voluntarily made with the drain in Chatham street, of the use of which he was a mere licensee, and for the damages resulting from which he had no right of action against the city.

That the owner of No. 17 Chatham street was under no greater obligation to keep the sewer in good condition than he was.

That nothing could be predicated of the fact that the corporation had issued the permit to make the connection with this drain, as it appeared from the evidence that at the time the permit was applied for the applicant was told that this was a private drain, and that the connection could not be made except with the consent of the owners.

*Quære*, whether the public authorities can, by an acknowledgment and adoption of a private sewer, make it a public one.

That the conveyance to and the use of the sewer by the bridge trustees was evidence of a possession, use or control of the sewer by the cities of New York and Brooklyn as private owners, and in that manner only, and not a possession, use or control by the city of New York, under any public authority, or a use accompanied or impressed with any public duty.

Upon the trial an objection was taken to the reading of a portion of the testimony taken on the preliminary examination of the plaintiff, pursuant to the statute, by the comptroller. His signature to the original examination being shown to the plaintiff, and he being asked if the signature was his own, and having said that it was, he was then asked whether he did not swear thus and so in that examination before the comptroller. It appeared from the record that the questioner read from this examination in asking the witness whether he did not swear thus and so before the comptroller.

*Held*, that it was not necessary, in order to frame a proper question, that the examiner should have shown the plaintiff the examination, or read from any portion of it; but that, if he choose to put the question, using the examination for the purpose of framing the question, he had the right to do so.

That the fact that the plaintiff had been asked whether he had or had not testified in the previous action in a certain way did not give him the right to read the balance of such deposition in evidence, as no part of the deposition had been offered in evidence.

APPEAL from a judgment recovered at the New York Circuit, which was entered in the office of the clerk of the county of New York on the 11th day of January, 1889, in favor of defendant; and

also from an order, entered on the 19th day of December, 1888, made upon the minutes of the justice presiding at the trial denying a motion to set aside the verdict and grant a new trial.

*D. Levenhitt,* for the appellant.

*David J. Dean,* for the respondent.

Van Brunt, P. J. :

The complaint in this action sets up two causes of action. In the first cause of action it is alleged that the plaintiff was the lessee of the premises known as Nos. 13 and 15 Chatham street, in the city of New York, which he occupied as a restaurant, wine and liquor saloon. That the defendant was a municipal corporation, and as such had charge of the sewers laid in and under the streets of the city of New York; that on or about the 1st of February, 1882, the defendant committed a nuisance upon the aforesaid premises by causing the refuse and contents of the sewer situated on Frankfort street in said city to be emptied thereon, and that, notwithstanding due and proper notice thereof was given to the proper officers of the defendant, the defendant continued to maintain the same from February, 1882, to October, 1883, whereby the plaintiff was damaged to the extent of $50,000.

For a second cause of action the complaint makes the same allegations in regard to ownership and occupancy by the plaintiff, and that the defendant, as such municipal corporation, had charge of the sewers laid in and under the streets of the city of New York, and that it was the duty of the defendant to use reasonable care and diligence in the management and repairs of such sewers so that the abutting owners should not be injured thereby, and that in disregard of said duty the defendant so negligently and carelessly managed the sewer laid in Frankfort street and Chatham street that the refuse and contents of said sewers, and each of them, flowed in and upon the premises of the plaintiff from February 1, 1882, to October 24, 1883 ; that the plaintiff suffered damage to the amount of $50,000, which damage the plaintiff claimed to recover in this action. Upon the trial it was proven that the plaintiff occupied the premises known as No. 15 Chatham street during the periods mentioned in the complaint; that a public sewer had been constructed in Frankfort street from

the corner of Frankfort and Chatham streets toward the East river; that on the 13th of October, 1857, upon the application of the owner of house No. 17 Chatham street a permit was issued to her to construct a private drain from said house through Chatham street, to connect with the sewer in Frankfort street; that said drain passed the premises of the plaintiff and connected with the Frankfort street sewer on its northerly side at a point some feet distant from the corner of Chatham street.

In October, 1880, a permit was issued on behalf of the then owner of the plaintiff's premises to open the street for the purpose of making a connection with the private drain constructed by the owner of the premises No. 15 Chatham street. At the time of applying for permission to make this connection the applicant was told by the permit clerk (and this was the fact) that there was no public sewer in Chatham street at that point. The applicant then wanted to know how the building No. 17 Chatham street was drained, and he was told that it was drained by a private drain built in 1857, connected with the sewer in Frankfort street; he was also told that the property No. 17 Chatham street had been taken for the Brooklyn bridge, and that no permission to use the drain would be given unless with permission of the bridge officials; and subsequently the applicant returned and said he had the consent of the bridge officials to connect with the drain, and thereupon the permit was given. He was also told that if he went in there he went at his own risk as the city officials did not know anything about it and did not have anything to do with it (referring to the private drain). On this permission the pavement was taken up and the connection made to drain the plaintiff's premises from the drain in question. The plaintiff fitted up the premises as a restaurant and bar-room, and commenced business in February, 1881, and subsequently in February, 1882, and on several occasions thereafter, sewer refuse ran into the plaintiff's premises through the connection which had been made with the drain, and his property was injured. On the 26th of February, 1883, and at various times thereafter the plaintiff gave notice that his premises were flooded from the sewer. In October, 1883, a public sewer was built in Chatham street, and the plaintiff's premises connected therewith, and since that time the drainage thereof has been perfect.

The main question submitted to the jury upon the trial was whether the overflow which came into the plaintiff's premises resulted from the stoppage of the private drain or the public sewer in Frankfort street, and the jury were instructed that if the drain in Chatham street was obstructed, and hence arose the difficulty, the city was not responsible, whereas if the jury found that the obstruction was in the Frankfort street sewer, the public authorities had not performed their duty and they became responsible for the overflow. The plaintiff sought to show that the premises No. 17 Chatham street, to which this drain was an appurtenance, had been conveyed by the owner thereof to the trustees of the Brooklyn bridge, and that such trustees had, by carrying into this sewer the water from the bridge, overcharged this drain, and that this was one of the causes of the overflow; claiming that as the bridge trustees were the joint agents of the two cities, of Brooklyn and New York, and that as they held this property in trust for the benefit of the two cities, and as the two cities were responsible for the wrongs which these bridge trustees committed in the administration of their trust, that, therefore, in this action the plaintiff had a right to recover the damages thereby sustained.

There seems, however, to be two answers to this proposition. In the first place he has alleged no such cause of action   The cause of action alleged in the complaint arises from the public duty which the city of New York owes to all its citizens in the maintenance of its public streets and sewers. It has no reference to any act which it may have perpetrated by its agents in respect to the management of its own private property. The cause of action is entirely separate and distinct from what would have arisen (if any exists), had it been attempted to charge the city as the owner of these premises for misuse of the appurtenances thereof which resulted in damage to the plaintiff. But it may well be said that even if the plaintiff had declared, so as to have entitled him to have this proof admitted, that no cause of action whatever had accrued, the damage which the plaintiff suffered arose from the connection which he had voluntarily made. It is clear he was a mere licensee for its use; and if as the result of that use he suffered damage, he had nobody to thank but himself. He had the means within his own control to stop that damage at once by cutting off his connection with the drain from which the

damage arose, and the owner of No. 17 Chatham street was under no greater obligation to keep that sewer in proper condition than were the owners of No. 15 Chatham street, who by their license had been permitted to make use of that drain.

There does not, therefore, seem to be any ground upon which the plaintiff could sustain a recovery under the pleadings, even if the plaintiff had been allowed to show that the property No. 17 Chatham street and the drain appertaining thereto had been conveyed to the trustees of the bridge, and was owned by the city of Brooklyn and the city of New York, and that these cities were responsible for the acts of the bridge trustees.

Neither can anything be predicated upon the fact that the corporation had issued the permit to make this connection with this drain. It appears from the evidence that at the time that permit was applied for the applicant was told that this was a private drain, and that the connection could not be made except upon the consent of its owners. It is urged that it was error to admit this evidence. But if it was error to admit this evidence, certainly it was error to admit the evidence of the clerk issuing the permit for the purpose of showing that the authorities had exercised dominion over this drain. If the clerk had the power to act for the city in the issuing of the permit, and thereby bind the city to the acknowledgment of this drain as a public drain, he certainly had equal authority to restrict that permit, and to prevent its operating in that direction. In fact, it would be rather a strained argument to hold that a permit clerk who has the right to issue a permit to open a public sewer (which sewers can only be opened under the regulations of the city authorities) could by such permit commit the city to the adoption of a private work. There is no principle upon which such a claim can be sustained, and it is only when there has been an acknowledgment and adoption by the public authorities that any right can be predicated upon the result of such adoption; and it is extremely doubtful whether there are any authorities that can adopt a private sewer and make it a public one. There are distinct provisions of law in regard to the construction of sewers. The law provides as to how they shall be laid, and how the plans shall be prepared so that there shall be a unity of system in reference to their construction. All these provisions would be abrogated by the pub-

lic authorities if they had the power to adopt a private work by anything that they might do.

Various cases are cited for the purpose of establishing the fact that it is a familiar principle that municipal corporations are responsible for all private drains or sewers of third persons in the event of adoption, user or dominion. But it will be found that in the leading case of *Nims* v. *City of Troy* (59 N. Y., 500), portions of that sewer were actually constructed by the city authorities, and that it was part and parcel of the same plan, and there does not appear to have been any restriction upon the city authorities as to the manner in which the sewers should be built, a very different case from the one at bar. The authorities cited in reference to the adoption of a public street have no application. In fact, there is nothing in this case going to show a public adoption except the issuing of the permit, which, from the very circumstances attending its issue, could not have any such effect; and by the fact that the bridge trustees have used the drain in connection with the very premises to drain which it was built.

We are asked was not the excluded testimony (namely the proof as to the premises being conveyed to the bridge trustees) the strongest and most conclusive possible to show adoption or possession, use or control of the Chatham street sewer by the defendant? As we have already said, that was no proof whatever of any adoption of the sewer by the city in its public capacity. By the conveyance and use of the sewer by the bridge trustees it was evidence of a possession, use or control of the sewer by the cities of New York and Brooklyn, and that only as private owners, and not a possession, use or control of such sewer by the city of New York under any public authority or impressed with any public duty.

As has already been suggested, even if the drain was overcharged by the bridge trustees it is difficult to see that they were under any obligation to the plaintiff. The users of a common drain have no action one against the other. It is no more the duty of the one to keep it open than it is the duty of the other; and if this drain was stopped, it was just as much the duty of the plaintiff to see that it was opened as it was the duty of the owners of the property No. 17 Chatham street to do so. The action of the bridge trustees in acquiring the title to this property and its appurtenances in no man-

ner rendered the drain a public sewer? It was an appurtenant to the property just the same as before, and was just as private as it had been before; and the mere fact that the cities of New York and Brooklyn owned this property, represented by their servants the bridge trustees, in no wise altered this relation.

The court, therefore, seems to have been entirely correct in holding that the plaintiff had no right to recover if the damage sustained by him resulted from a stoppage in the private drain which had been constructed to connect No. 17 Chatham street with the sewer in Frankfort street, and the jury having found by their verdict that the obstruction was not in Frankfort street, which finding was certainly according to the evidence, there seems to be no reason for disturbing the verdict which has been rendered.

Various other exceptions have been taken to the rejection of evidence. Amongst others was an objection to the reading of a portion of the testimony taken on the preliminary examination of the plaintiff, pursuant to the statute, by the comptroller. The record shows that the original of such examination was in court, and the plaintiff was shown what purported to be his signature to such examination and asked if it was his, and he said it was. He was then asked whether he did not swear thus and so in that examination before the comptroller, and a variety of questions were put to him in that form. It appears from the record (improperly, as no such statement should have been made in view of the manifest manner in which the question was put) that the questioner read from this examination and asked the witness whether he did not swear thus and so before the comptroller. It was not at all necessary, in order to frame a perfect question, that he should have shown plaintiff this examination or read from any portion of it, but if he chose to put the question, using the examination for the purpose of framing the question, the examiner had a right to do so. He was not reading the examination in evidence or any part of it. He was only asking the witness whether, on a previous occasion in connection with this transaction, he had not stated certain things. This gave no right, upon the part of the plaintiff, to have read the whole of his deposition. If there was anything that was pertinent in reference to the matter inquired about, and which would explain the answer which he then made, it was competent, upon the part of his counsel, to have asked him " Do you

not also state thus and so" in connection with the matter about which you have testified? Or, in the event of his having been asked for a statement which formed part of the testimony relating to a particular point, he could have been asked to state the balance relating to that subject. But the mere fact of his having been asked whether he had or had not testified on a previous occasion in a certain way in no way gave the plaintiff the right to read the balance of such deposition in evidence, as no part of the deposition ever had been offered in evidence, and it was only a method of cross-examination, well recognized and well established.

Our attention is called to another exception which is claimed to exist, and which, if it did exist, would be a very serious impediment in the way of the affirmance of this judgment. It is claimed, upon the part of the appellant, that the following question was excluded, the witness on the stand being Mr. Stephenson Towle, who had testified that during the years 1882 and 1883 he held the position of chief engineer of the bureau of sewers, and it is claimed that Mr. Towle, by reason of his position, might well be presumed to be officially cognizant of all acts of the city which were performed in reference to that sewer in order to establish adoption or dominion over the sewer by the city. The question put to Mr. Towle was, "Did your department do anything with that private drain while you were there, so far as you know?" It is claimed that this question was put by the plaintiff's counsel and was excluded, and that the plaintiff excepted. It, however, appears from the record that the question was put by defendant's counsel; that the plaintiff objected to its being answered; the objection was overruled and an exception taken, and the question was answered "We did not."

Upon the whole case we are of opinion that no error was committed and that the judgment should be affirmed, with costs.

Daniels and Barrett, JJ., concurred.

Judgment affirmed, with costs.