Filed Feb. 2, 1892.

———◆———

No. 286.

## THE TOWN OF MONTICELLO v. FOX ET AL.

MUNICIPAL CORPORATION.—*Defective Drainage.*—*Failure to Provide Drainage.*—*Liability of Town.*—A ditch was established by decree of court, upon petition of a property-owner. The ditch in part ran through a town, but the town had nothing to do with its construction, and never repaired it or drained into it, and had no relation to it save that the greater portion thereof, if not all of it, so far as it was completed, was within the corporate limits, and the town had been assessed for benefits to certain of its streets and had paid such assessments.

*Held*, that the owner of property in the town which was damaged by reason of defects in said ditch could not maintain an action against the town, since a municipal corporation is not responsible for failure to exercise its power to provide drainage.

PRACTICE.—*Sustaining Demurrer to Certain Paragraphs.*—*When not Error.*—There is no available error in sustaining a demurrer to the second and third paragraphs of an answer when the material matters alleged in said paragraphs were admissible in evidence, and were admitted under the first paragraph of answer.

From the White Circuit Court.

*W. S. Hartman* and *W. H. Hamelle*, for appellant.

*T. F. Palmer*, ——— *Spencer, J. H. Gould* and *G. R. Eldridge*, for appellees.

BLACK, J.—A demurrer to the second and third paragraphs of the appellant's answer was sustained; but the appellant was not injured by this action of the court, for the material matters alleged in these paragraphs were admissible in evidence, and were admitted under the first paragraph of answer, which was the general denial.

The appellant's motion for a new trial was overruled, and we have examined the evidence.

The facts of the case, stated as briefly as may be, were as follows:

The appellees owned two lots in the town of Monticello, adjoining the western boundary of the town. A street, known as Main Cross street, extended along the north side of said lots.

The portion of said street which ran through this section of the town had been, before the territory through which it ran was brought within the corporate limits, a part of a road running westward from the town.

Along the east side of said lots extended another street, the name of which did not seem to be known by the witnesses. One of the appellees, who was a witness, and who resided on said property of the appellees, did not know the name of this street, but it was agreed on the trial that it was Third street.

Immediately south of the intersection of these streets was a large pond, which extended across Third street and covered a portion of the lots of the appellees when they became the owners thereof in 1883. Along each side of Main Cross street was a shallow ditch, made by throwing up the earth to raise the roadway. For many years there had been a culvert connecting these ditches near the northeast corner of said lots. After this part of the road became a part of the street, a tile culvert had been put in by the town at this place on a level with the ditches on either side, and the town had put some gravel on the street. The town had not improved or changed the street, except by so replacing the old

culvert, and by so gravelling the roadway, the last work done by the town being the placing of some gravel there about fourteen or fifteen years before the trial. Water flowed into said pond along Third street from the south and from the north, that coming from the north passing through said culvert. About one hundred and fifty feet north of said culvert was a ridge, or elevation, and the water which came through the culvert was the surface drainage of the ground lying between said elevation and the street and that which flowed through said road ditches, which extended some rods eastward and westward, with slight descent towards the culvert, and drained the roadway and adjacent ground.

The pond was a natural depression, containing water during a considerable portion of the year, and all the water that collected in it was water that would flow thither naturally, and its quantity was not appreciably increased by reason of any artificial change mentioned above.

In February, 1884, under the provisions of the act of April 8th, 1881 (R. S. 1881, section 4273, et seq.), as amended by the act of March 8th, 1883 (Acts of 1883, p. 173), providing that any owner or owners of lands which would be benefited by drainage, which could not be accomplished in the best and cheapest manner without affecting other lands, might secure such drainage by proceedings upon petition to the circuit court, or the superior court, the White Circuit Court, in a proceeding commenced on petition of one John H. Day, established a certain drain in Union township, White county, referred to by the witnesses in the case before us as the Day Tile Ditch, and directed one of the commissioners of drainage of said county, one Orton, to construct said drain.

Assessments of benefits were made on the owners of certain lands, on certain railroad companies, on the town of Monticello, on said Union township, and on the owners of many lots in said town. The appellees were assessed as the owners of their said lots, and they paid their assessment.

The greater portion of the course of the projected work lay within the corporate limits of said town.

Said Orton, as such commissioner, commenced the making of the drain at its outlet at the Tippecanoe river, in 1884. Its course ran thence northwestwardly to a point in Third street near the northeast corner of the lots of the appellees; thence northward and northwestward toward certain distant ponds. During the season of 1884, the drain was constructed from its outlet past the property of the appellees. Said Orton continued the construction in later years, but at the time of the trial, in February, 1890, the commissioner still had charge of the work, which still remained unfinished. The drain was constructed of two ten-inch tiles buried several feet beneath the surface.

In 1888, the appellees constructed on their said lots a two-story brick dwelling-house, with a cellar beneath it. At different times they filled up the pond where it encroached upon the lots. The house was built upon the highest portion of the lots, where the surface was as high as the surface of Main-Cross street or higher. They connected said cellar by tiling and pipes with said Day Tile Ditch in Third street. Before the walls of the cellar were completed, the cellar was flooded, and the walls of several feet in height were covered with water, which flowed in through said connection with said ditch. After the house was completed the water came into the cellar through said connection with the ditch, and when the appellees shut it off from such access by closing the connecting pipe at its end in the cellar, the water burst through the cemented floor of the cellar. Many times the cellar had been thus flooded, and the water from said pond had often backed up and covered a considerable portion of said lots.

The evidence showed that said Day Tile Ditch had been obstructed at various points between its outlet and the property of the appellees, and that it had been repaired at points in that interval by certain persons across and beneath whose

private grounds it was constructed, and by said drainage commissioner. Before the construction of said ditch there had been a shallow open ditch running from said pond in a southeastward direction, by which some portion of the water which accumulated there flowed off. This surface ditch had been filled up by a base-ball club after the tile ditch was constructed on this part of its course. It appeared that if the tile ditch had been in good repair below the premises of the appellees, and if there had been an opening into the ditch at the pond for the direct ingress of the water, the appellees would not have suffered damage from the water.

The appellees, as one of them testified, tapped the tile ditch and made said connection therewith without any permission from the town. At one time, when the property of the appellees was so flooded, one of the appellees showed the premises to the town marshal. It did not appear that the town had ever repaired the ditch, or had ever drained into it, or that the town had any relation to the ditch except that the greater portion thereof, if not all of it so far as it was completed, was within the corporate limits, and the town had been assessed for benefits to certain of its streets and had paid such assessments.

There were two paragraphs of the complaint. In the first it was alleged, among other things, that the appellant had sole jurisdiction for the improvement and drainage of streets, and the building and construction of sewers and drains, within the corporate limits of said town, and had adopted and maintained a system of sewerage and drainage, and so constructed the drains, sewers and ditches that the rain falling upon a vast amount of territory, to wit, a space of about five hundred acres, had been caused to flow into and upon said Third street at and near the place where it intersects said Main-Cross street in front of the appellees' said property, and that thence the plan of said system was to convey said water by gutters and sewers into Tippecanoe river, etc. ; and that although the appellant, by said system of sewerage and drain-

age adopted by her, had vastly increased the volume of water flowing by said grounds of the appellees, yet the appellant had failed to provide a sufficient way of exit and egress for such increased volume of water ; also, that the appellant had so negligently and unskilfully, and in such an imperfect and defective manner, constructed and maintained the drains, ditches and sewers along said Main Cross street, leading from the west and from the east, and through the fields leading from the northwest, to and near the intersection of said Third street and said Main Cross street, fronting said grounds of the appellees, and had so negligently, etc., constructed and maintained the drains, ditches and sewers leading from said intersection toward said river, by making and keeping said drains and sewers insufficient in size and capacity to carry off the water which was compelled to pass through them, and by obstructing all other egress for said water, and by suffering and permitting said sewers and drains leading from said intersection to become and remain stopped up so as to prevent and obstruct the flow and passage of the water so brought to said intersection, and to dam up the water and cause it to back and rise and stand in front of said property of the appellees, and to flow into the cellar of the appellees, etc.

In the second paragraph of the complaint it was alleged, among other matters, that the appellant constructed, and caused to be constructed, accepted, adopted and maintained on and along the north side of Main Cross street, and for a distance one-half mile northwestwardly, ditches and drains, so as to gather together out of the natural channels and to accumulate into one body and stream all the water for the distance of two hundred yards eastwardly, four hundred yards westwardly, and three hundred yards northwestwardly on the north side of Main Cross street, which was so elevated that it formed an obstruction to said water so accumulated, and prevented it from overflowing and damaging said property of the appellees; that appellant constructed, maintained, adopted and accepted a ten-inch-tile culvert under and across

said Main Cross street north of said property of the appellees, in such manner that said water so accumulated and collected out of its natural course and channels was made to overflow said property, etc.

Under the act of March 11, 1867 (sections 3392, 3406, R. S. 1881), the board of trustees of any incorporated town has full power and authority to construct and repair any sewer along any street or alley in such town, or along any part of a street, block, or square, in such town, and such trustees are expressly made the sole judges of the necessity and utility of the construction of such sewer.

Proper proceedings are provided for by said act for the construction of sewers by said board, and for the payment of the cost of such construction; and it is provided (section 3405) that said board shall provide, by an ordinance, "for the protection of said sewer and the manner and terms that any person or persons may tap, open, or intersect said sewer; and no person shall be allowed to tap, open, or intersect, or in any manner interfere with the same, without first procuring a permit from said board of trustees."

The board of trustees of an incorporated town has power to lay out, open, grade and otherwise improve the streets, alleys, sewers, sidewalks and crossings, and to keep them in repair; and to vacate the same (section 3333, R. S. 1881, cl. 9), and said board is given exclusive power over the streets, alleys, highways and bridges within the corporate limits (section 3367, R. S. 1881), and provision is made for the mode in which the improvement of a street may be sought and accomplished (section 3363, R. S. 1881, et seq.)

It is a well established doctrine that a municipal corporation is not liable to an action for damages accruing by reason of the failure of the corporation to exercise its discretionary powers of a public or legislative character, as for a failure to provide drains and sewers. It is liable for an injury accruing by reason of its failure to perform a ministerial duty, or by reason of its performance of a ministerial duty

negligently or without the exercise of due skill.   *Weis* v. *City of Madison*, 75 Ind. 241; *City of Evansville* v. *Decker*, 84 Ind. 325; *City of Peru* v. *Gleason*, 91 Ind. 566; *City of Anderson* v. *East*, 117 Ind. 126; *Stackhouse* v. *City of Lafayette*, 26 Ind. 17; *City of Lafayette* v. *Timberlake*, 88 Ind. 330; *Wheeler* v. *City of Plymouth*, 116 Ind. 158.

The act of directing the construction of a drain, or a system of drainage, is a legislative act, but the construction of the drain, or the system of drainage, is the performance of a ministeral duty.

A municipal corporation is not liable usually for damages arising from the necessary and usual results of a proper exercise of its statutory authority, unless there be express provision of law for the payment of damages.   It is not responsible for consequential damage from the proper and skilful construction of its streets or sewers, but only for the results of negligence or unskilfulness in the prosecution of the work; though this doctrine may not be invoked to justify a direct invasion of private property.   If a municipal corporation divert surface-water from its natural courses, and collect it into an artificial channel, and discharge it in increased quantity, or in new currents, upon the lands of others, thereby casting upon such lands, in artificial channels, water which otherwise would not have found its way thither, the corporation is liable for the damage so occasioned.   6 Am. & Eng. Encyc. of Law, 22; Dillon Mun. Corp., sections 1047, 1051; *Davis* v. *City of Crawfordsville*, 119 Ind.1; *Weis* v. *City of Madison*, 75 Ind. 241.

A municipal corporation is not exempt from liability for damage accruing through its failure to provide means of drainage where a necessity for the drainage has been created by the act of the corporation.   Where, by a system of drainage made by it, a great body of water has been conducted to a place, and caused to accumulate there, the corporation is liable for failure to provide a way of escape for the water, so that it will not damage adjoining private property.   *City of*

*Indianapolis* v. *Lawyer*, 38 Ind. 348; *Weis* v. *City of Madison, supra; City of Evansville* v. *Decker, supra; City of Crawfordsville* v. *Bond*, 96 Ind. 236; *City of Fort Wayne* v. *Coombs*, 107 Ind. 75; *City of Terre Haute* v. *Hudnut*, 112 Ind. 542.

A municipal corporation is liable for the flooding of private property through neglect to keep its sewers in proper repair. "There is a municipal liability where the property of private persons is flooded, either directly or by water or sewage being set back, when this is the result of the negligent execution of the plan adopted for the construction of gutters, drains, culverts, or sewers, or of the negligent failure to keep the same in repair and free from obstruction, and this whether the lots are below the grade of the streets or not. The cases support this proposition with great unanimity." Dillon Mun. Corp., section 1051.

A municipal corporation is liable to one who, by its invitation or permission, for his private benefit, connects his premises with a sewer constructed by the corporation, and is injured by the back flow of water into his premises, resulting from the negligent construction of the sewer or the negligent failure of the corporation to keep it in repair and free from obstruction. *City of Fort Wayne* v. *Coombs, supra.*

But this rule does not apply where the owner of the premises has voluntarily tapped the public sewer, and made the connection therewith without invitation or authority. *Darling* v. *City of Bangor*, 68 Maine, 108; *Barton* v. *City of Syracuse*, 36 N. Y. 54; *Kosmak* v. *Mayor, etc.*, 53 Hun, 329; *City of Atlanta* v. *Word*, 78 Ga. 276.

*State, ex rel.*, v. *Jackson*, 118 Ind. 553, was an action to collect an assessment made upon lands of the defendants situated in a town, for the construction of a drain under the provisions of the drainage law of 1881, under which, as amended in 1883, said Day Tile Ditch was constructed. It was decided that the jurisdiction of the circuit court to establish the ditch and levy assessments therefor upon property within the cor-

porate limits of the town could not be questioned by the defendants in that action; that the judgment, although erroneous, could not be attacked collaterally by a person properly in court in the cause.

It need not be determined whether the appellees were concluded as to the validity of the orders of the circuit court in the ditch proceeding, or whether the control of the ditch actually exercised by the commissioner, under the supervision of the court, was a valid control. The question here is whether the appellant negligently performed or failed to perform a ministerial duty.

The appellant, as appears from the evidence, did not, by any drain or system of drainage constructed or adopted by it, cause water to be gathered into a channel and to be cast directly upon the property of the appellees, or to accumulate out of its natural courses upon or near to said property without means of escape, and did not by reason of its negligent construction or maintenance of any drain or sewer cause water to set back upon said property or to flow back into the cellar of the appellees through said connecting drain constructed by the appellees.

We need not inquire what would have been the effect upon the question of the appellant's liability if it had actually assumed control over the Day ditch, constructed under the order and supervision of the circuit court along and across streets and across the lots of private owners, and still unfinished and still controlled, managed and repaired by the commissioner of drainage for the county, pursuant to the orders of said court.

It does not appear that the municipal corporation had ever assumed as much right to interfere with the ditch as had been exercised by the appellees. Like the appellees, the town had been assessed and had paid the assessment, but it had not undertaken to make any use of the ditch or to exercise any jurisdiction over it. The damage to the appellees accrued from the defective construction of the tile

ditch or the obstructions along its course occasioned by dilapidation and want of proper repairs. They built their house and connected it with the drain when it was in such defective condition. Their action against the appellant is an attempt to hold the municipal corporation liable for failure to exercise its legislative power to provide drainage for a certain district of the town.

The finding for the appellees was not sustained by sufficient evidence.

The judgment is reversed, and the cause is remanded for a new trial.

Filed Oct. 29, 1891; petition for a rehearing overruled Jan. 23, 1892.