## KELLY *v.* PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY ET AL.

[No. 3,494.   Filed March 11, 1902.]

LIMITATION OF ACTIONS.—*When Right of Action Accrues.—Adverse Possession.*—Where a railroad company constructed an embankment and maintained a culvert of insufficient size to carry away the accumulation of water in times of heavy rains, resulting in the overflow and damage to plaintiff's property, plaintiff's action for damages accrued at the time of the overflow and resulting injury, and not at the time the embankment and culvert were constructed. *p. 462.*

SAME.—*Accrual of Right of Action.—Overflow of Land.—Private Rights.* —An action by a property owner for damages for the overflow of his land caused by the construction of an embankment and an insufficient culvert by defendant, brought more than twenty years after the construction of the embankment and culvert, is not

barred by limitation and rights acquired by defendant by prescription, where the embankment was constructed in a public highway, since if plaintiff was injured by such act it was such injury as the public in general suffered, and for which he had no remedy, and his private right of action did not accrue until his land was overflowed and damaged. *pp. 462–468.*

NUISANCE.—*Prescription.*—The right to maintain a public nuisance cannot be acquired by prescription. *pp. 464, 465.*

MUNICIPAL CORPORATIONS.—*Railroads.*—*Liability to Property Owner for Overflow of Lands.*—Where a city granted to a railroad company the right to maintain upon one of its streets an embankment upon which to lay its tracks, imposing a condition that the company should construct and maintain culverts of sufficient size and number to carry away the accumulation of water, which it failed to do, and the city constructed a ditch leading to the single culvert through the embankment, the natural result of which was to collect the surface water within the channel and conduct it to the culvert, which was insufficient in size to carry the water away, and the water thus accumulated overflowed the lands of an adjacent property owner, the combined acts of the city and railroad company were the cause of the injury to the adjoining landowner, and they are jointly liable. *pp. 467, 468.*

From Clark Circuit Court; *W. C. Utz*, Special Judge.

Action by James R. Kelly against the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company and the city of Jeffersonville for damages for the overflow of land. From a judgment for defendants, on demurrer to complaint, plaintiff appeals. *Reversed.*

*L. A. Douglass* and *H. W. Phipps*, for appellant.

*S. Stansifer*, *M. Z. Stannard* and *G. H. Voigt*, for appellees.

WILEY, J.—Appellant was plaintiff below, and his complaint was held bad on separate demurrers. He declined to plead further, and judgment was rendered against him for costs. By his assignment of errors he questions the correctness of the court's action in sustaining the demurrers to the complaint.

The complaint avers that on December 3, 1867, the common council of the city of Jeffersonville passed an ordinance granting to the predecessor of appellee railroad company

the right to construct and maintain its railroad on and along Ninth street, between certain points named by said ordinance; that the ordinance imposed upon the company the duty "to make and maintain good and substantial culverts, such as the civil engineer of said city should direct and approve, at all places where said engineer or the common council might direct, so as to allow the free passage of water underneath said track and bank"; that in 1868 the railroad company, under the provisions of the ordinance, constructed its tracks and railroad bed on and along Ninth street, and in doing so threw up an embankment of earth forty feet wide at its base, twenty-five feet wide at the top, and about ten feet high; that said track and embankment were constructed by the railroad company under the direction of the civil engineer of said city, and when completed were approved by said city. The complaint then contains the following averments: "That at the time of the passage of said ordinance, and the *building* of said track and bank, that portion of said city lying contiguous to said bank and track for as much as twenty-five blocks was low, inclined toward the north, and had a *natural* drainage across said Ninth street and said proposed track and bank, and the drainage of a large part of said city, to wit, twenty-five blocks were drained and carried toward the north across the said line of bank and railroad track and Ninth street; and said drainage and water and the flow thereof was not obstructed, but was free and carried away and off by *natural* drainage on the *surface*, without damage to the citizens and property within said city, and said water and drainage had access towards the north and at numerous places across the said proposed line of railroad track and banks, and was diffused and scattered in its flow along and over the *surface* across said line of railroad.   *   *   *   That the building of said track and bank cut off and obstructed the flow of water and drainage toward the north across the same, and the defendant railroad company carelessly failed and omitted to

make and maintain culverts and openings through said bank sufficient to allow the free passage of water underneath said track, but the plaintiff says that the defendant company built and constructed but one culvert and sewer underneath said track and bank, and the same was constructed within and on the public alley of the city [describing its location], but said culvert and sewer were insufficient in size, too small, and inadequate to permit the free passage of water and drainage through said bank under said track as aforesaid." It is also averred that the building of said track and bank was under the direction of said city, and prevented the free flow and natural drainage of water, rainfall, sewerage, and drainage of a large portion of said city, viz., as much as twenty-five blocks, to accumulate and be at a point between Spring street and Indiana avenue, on the south side of Ninth street, in a certain open ditch constructed and maintained by said city, and connected with a certain sewer and culvert for the purpose of causing said water, sewage, and drainage to flow in and through said drain, ditch and culvert. It is further alleged that but for the construction of said bank, ditch, and drain, said water, drainage, and sewerage would not otherwise accumulate and flow in said place, and that said bank, drain, ditch, sewer and culvert changed the natural surface flow of the rainwater of that portion of the city, and caused the same to flow in said ditch or drain and through said sewer and culvert; that prior to the time said bank was constructed that portion of the city lying contiguous thereto, for as much as twenty-five blocks, was low, inclined toward the north, and had a natural drainage across Ninth street, and that said drainage and water and the flow thereof was not obstructed, but was free, and was carried away by natural drainage on the surface without damage to the citizens and property within said city, and said water and drainage had access toward the north, and at numerous places across the proposed line of railroad track and bank, and was diffused and scattered in its flow

along and over the surface and across the said line of road; that on the 10th day of July, 1897, while said bank, drain and sewer were in the condition above described, there occurred a heavy fall of rain, and that "said rain and the drainage caused thereby" caused an accumulation of water to form in said ditch and drain, at said culvert and sewer, and said culvert being inadequate and insufficient in size to carry off the same through and under said track, caused the water and drainage to back up on the north side of said bank, and to be cast back upon plaintiff's private property, and overflowed into his store, destroying his property, etc.

The complaint shows that the natural flow of surface water on a contiguous territory of about twenty-five blocks was toward and over Ninth street, flowing to the north, and that the flow of the water was unimpeded, except by the embankment made by the railroad company. It also shows that the one culvert constructed and maintained was of insufficient size to carry the accumulation of water away in times of heavy rains, etc. That as a consequence of such obstruction and insufficient size of the culvert and the ditch or drain constructed by the city to gather and carry away the surface water, the water backed up and overflowed appellant's property, resulting in the damage complained of. It is clear from the averments of the complaint that had it not been for the embankment and insufficient size of the culvert no injury would have resulted to appellant.

It is urged by counsel for appellees that this is one of the instances known to the law where there is no commensurate remedy for the injury. The power of the city to grant an easement to the railroad company to construct an embankment and lay its track in the street is unquestioned by appellant, but it is urged that the law makes ample provision for the redress of any wrong resulting therefrom. Counsel for appellees base their argument, and maintain that there is no liability shown by the complaint, upon two propositions: (1) The statute of limitations, and (2) rights ac-

quired by prescription. These may properly be considered together.

It is contended by appellee that the right of action was barred by prescription, upon the theory that the right accrued at the time the embankment and culvert were constructed, and not at the time of the overflow and resulting injury. The authorities do not sustain this contention, and it is not in harmony with correct principles. In *Sherlock* v. *Louisville, etc., R. Co.*, 115 Ind. 22, on page 38, Zollars, J., quotes approvingly from 1 Redfield on Railways, 595, as follows: "The general rule, in regard to the time of the accruing of the action is, that, when the act or omission causes direct and immediate injury, the action accrues from the time of doing of the act, but where the act is injurious only in its consequences, as by undermining a house or wall, or causing water to flow back at certain seasons of high tide or high water, the cause of action accrues only from the consequential injury."

In that case the question was squarely presented, whether the cause of action accrued at the time a certain bridge was constructed over a watercourse, or at the time the injury was caused by the overflow; and upon that question the court said: "As regards the limitation of time for bringing the action, we think that the plaintiff was properly entitled to succeed, both on the second and fourth pleas, for that the cause of action first arose when the damage was suffered, there being no complete cause of action till the damage was sustained. The defendants were guilty of no illegal act that could have been complained of as a trespass, and until it proved to be injurious there was no right to sue."

In that case it was also contended by the railroad company that, having maintained the bridge for twenty years, it had the right to continue to maintain it as it was, although it caused adjoining lands to overflow. There the bridge was on the land of the railroad company, and the rights of the plaintiff could in no way be invaded by its maintenance un-

til he in some way suffered an injury on account thereof. The court disposed of the proposition in the following language: "Until a person's rights are in some way invaded, they can not be destroyed or transferred to another by prescription. Time—in this State twenty years—is an essential element in the establishment of a prescriptive right, and, in a case like this, begins to run only from the date at which a cause of action accrues in favor of the party against whom the right is asserted. As we have seen in this case no cause of action accrued to appellant, by reason of the negligent construction of the bridge, until the overflow of his land in 1883, much less than twenty years ago." In the same case, the court quoted with approval from Wood on the Law of Nuisances, §708, as follows: "There is a distinction between a prescriptive right to do some act upon one's own premises that operates injuriously to another, and a right to do some act upon another's premises. In the latter case, each act of user, before the user ripens into a right, is a trespass, for which an action may be maintained at any time, while in the former no action can be maintained until some right has been invaded. In the one case there is an actual invasion of the property itself, while in the other there is a mere invasion of some right. *  *  * The rule is, *  *  * that to constitute an adverse user requisite to sustain the right, it must be shown that the user had actually invaded the rights of the person against whom the claim is made, in reference to the particular matter which is the subject of complaint, and that the user, during the entire statutory period, and the invasion of the right, have produced an injury equal to, and of the character complained of, and of such character and to such an extent that at any time during that period an action might have been maintained."

In the case we are considering, the railroad company did not construct its embankment and culvert upon its own premises, but upon a public highway, to which the city granted it an easement for that purpose. By that act, if ap-

pellant was injured, it was such injury as the public in general suffered, and for which he had no remedy.

The complaint does not locate appellant's property, and it may not have been on Ninth street or immediately contiguous thereto. The injury that resulted to him did not accrue until the water was backed onto his premises by reason of the embankment and insufficient culvert, and until such injury accrued to his property he had no right of action.

The complaint avers that the culvert was constructed at the intersection of Ninth street and an alley, and that on many previous occasions water had backed up and onto surrounding property causing injury, etc. This reference in the complaint to the location of the alley and previous damage done by an accumulation of water is to show that the nuisance complained of is a public one.

An alley is a highway. Elliott on Roads and Streets, §§1, 24. Any unauthorized obstruction which necessarily impedes or incommodes the lawful use of a highway is a public nuisance at common law. Elliott on Roads and Streets, p. 477; *Yates* v. *Town of Warrenton*, 84 Va. 337, 4 S. E. 818, 10 Am. St. 860; *Callanan* v. *Gilman*, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. 831; *State* v. *Merrit*, 35 Conn. 314.

The complaint avers that the culvert was insufficient in size to carry off the water, and that from time to time caused overflow of the streets, alleys, and avenues. These facts show that such injurious results constitute a public nuisance. The demurrer admits the truth of all facts well pleaded, and it is clear therefore that the railway company's claim that it is not liable rests either in prescription or in adverse possession for over twenty years. If it rests in prescription, the theory that adverse possession of a public highway creates a right or title carries with it its own refutation. So if the right to maintain this negligently constructed and insufficient culvert can be claimed as a prescriptive right, by user, for over twenty years, it must be such as results from a private nuisance. But it is not a

private but a public nuisance, and the right to maintain a public nuisance cannot be acquired by prescription. *Pettis* v. *Johnson*, 56 Ind. 139; *Sherlock* v. *Louisville, etc., R. Co.*, 115 Ind. 22. In *Pettis* v. *Johnson, supra,* it was held that a city has no power to authorize obstructions in highways which, when constructed, will permanently interfere with the enjoyment of the rights either of the public or a private person. When, therefore, the railroad company took the franchise or easement granted to it by the city, it took it subject to the limitation which the law placed upon it that it would not construct or maintain anything which would permanently interfere with the rights of private persons, or would result to their injury. Also it took it with the express limitations contained in the ordinance to construct and maintain sufficient culverts to carry off the water.

As between the city and railway company, on the one hand, and appellant, on the other, he had a right, in common with all citizens and the public, to have the public streets and alleys of the city free from overflow of water; the right to be protected from the accumulation of drainage and surface water upon his premises caused by the appellees; the right to be protected from having water backed upon his premises by reason of a permanent obstruction such as is shown by the complaint; and the right to the continuous surface drainage, which naturally was toward Ninth street, and in the event such water was deflected by the city and such deflection caused an accumulation of water at any point more than would otherwise flow there, to have the city and those charged with making and maintaining culverts to carry off the water to construct the same in sufficient numbers and of sufficient capacity to carry off and discharge the water so gathered.

In this case it is averred that the city caused a ditch or drain to be constructed leading to the culvert. This would necessarily collect and carry to that point a greater volume of water than would otherwise have gathered there, and the

culvert being of insufficient size to discharge it, the necessary result was that it backed up. If surface water is collected in gutters and made to flow to the mouth of a sewer, where by the insufficiency of the sewer it accumulates in large quantities and then flows back upon private property, the municipality must respond in damages. *Hitchins* v. *Mayor, etc.*, 68 Md. 100, 11 Atl. 826, 6 Am. St. 422; *City of Dixon* v. *Baker*, 65 Ill. 518, 16 Am. Rep. 591.

The accumulation in one channel of a large volume of water by the act of a city places upon it the duty to see to it that suitable provision is made for the escape of the water, without injury to private property, and if by reason of the insufficiency of the drain, or other means provided, the accumulated waters are cast upon private property to its injury, the municipality will be liable. *Weis* v. *City of Madison*, 75 Ind. 241, 39 Am. Rep. 135; *City of Indianapolis* v. *Lawyer*, 38 Ind. 348; *City of Evansville* v. *Decker*, 84 Ind. 325, 43 Am. Rep. 86; *City of Crawfordsville* v. *Bond*, 96 Ind. 236; *Byrnes* v. *City of Cohoes*, 67 N. Y. 204.

In this instance the city collected the surface water by means of an artificial ditch and carried it to a point where the means of escape provided was insufficient to carry it off. It is certainly the same in principle as to conduct, by means of a ditch or gutter, water to a sewer of insufficient capacity to receive and conduct it away. If, in constructing the culvert, it was merely an error of judgment in not making it large enough, or in not constructing a sufficient number of culverts, still the appellees could not escape liability on account of error of judgment. This is squarely held in *City of Indianapolis* v. *Huffer*, 30 Ind. 235.

Before the construction of the bank and culvert by the railroad company, there were twenty-five blocks of adjacent territory with the natural drainage toward and over Ninth street. The means used to cause the water to flow as it did were artificial—the bank and the ditch or drain. In *City of New Albany* v. *Ray*, 3 Ind. App. 321, it was said:

"Where a city, by artificial means, collects a body of water it must use reasonable care to provide an adequate outlet therefor, and, if it fails to do this, and an injury results to private property in consequence thereof, the city is liable for the damages."

In *Town of Monticello* v. *Fox*, 3 Ind. App. 481, it was said: "A municipal corporation is not exempt from liability for damage accruing through its failure to provide means of drainage, where a necessity for the drainage has been created by the act of the corporation. Where, by a system of drainage made by it, a great body of water has been conducted to a place, and caused to accumulate there, the corporation is liable for failure to provide a way of escape for the water, so that it will not damage adjoining private property."

The point clearly decided by these cases is that it is the duty of a city, where it causes water to be collected, to furnish a sufficient outlet for its escape, and if it fails to do so, and injury results, it is liable for damages occasioned. See, also, *City of Valparaiso* v. *Ramsey*, 11 Ind. App. 215; *Martin* v. *City of Brooklyn*, 4 Am. Neg. Rep. 721.

In the case of the *City of New Albany* v. *Lines*, 21 Ind. App. 380, it was held that a municipal corporation can not, without liability, divert surface water from its natural course by an artificial channel, and thereby cause it to flow upon adjacent property. It was further held that it is the duty of a city to provide reasonably sufficient means of escape for the surface water, for the escape of which it has created the necessity, and that a failure to perform that duty will give a right to successive actions for recurring injuries to an adjacent owner of real estate.

The complaint before us shows that the city of Jeffersonville granted, by ordinance, the right of the railroad company to construct and maintain along and upon one of its streets an embankment upon which to lay its track. A condition imposed upon the railroad company by the grant was

to construct and maintain culverts of sufficient size and number to carry away the accumulation of water. This it failed to do. The city constructed a ditch or drain leading to the single culvert through the bank and under the track. The natural result of such drain was to collect the surface water within its channel, and conduct it therein to the point of outlet—the culvert. This must necessarily result in an accumulation of water at that point; and if the outlet was insufficient in size to carry it away, then the water would back up and overflow adjacent property. This is what occurred, and injury resulted to appellant's property. The combined acts of appellees were responsible for such injury, and, under the authorities, they are jointly liable.

Judgment reversed, and the court below is directed to overrule the demurrers to the complaint.