THE OHIO AND MISSISSIPPI RAILWAY COMPANY *v.* SIMON.

NUISANCE.—*Complaint.*—*Demurrer.*—*Statute of Limitations.*—A complaint alleging that the plaintiff was the owner of a lot on which he had erected a building used by him as a hotel and boarding house, and that adjoining his building defendant had made and maintained cattle pens, and in these pens confined a large number of cattle and hogs, which, by their noises, and by the filthy condition of the pens, and the sickening and fetid matter therein, and the unhealthy effluvium therefrom, were annoying to the senses, and injurious to the health of the plaintiff and his family and his guests, and destroyed his business and the use and enjoyment of his property, and constituted a nuisance, was, on demurrer, held sufficient to constitute a cause of action.

*Held*, also, that as the nuisance tended to deprive the plaintiff of the use of his real -property, the action must be brought within six years from the time the cause of action accrued; and an answer that the action did not accrue within that period constituted a good defence.

APPEAL from the Jennings Circuit Court.

DOWNEY, J.—This was an action by the appellee against the appellant. The first paragraph of the complaint alleges, in substance, that the plaintiff is the owner of lot number two hundred and twelve, in block R, in the town of North Vernon, in Jennings county, on which he has a large and commodious house, used by him for a hotel and boarding house, and has used it for such purposes for ten years last past; that the defendant has erected, and for ten years maintained in said town, adjacent and adjoining his said premises, certain hog and cattle pens and hog and cattle shoots, for the purpose of confining hogs and cattle therein and shipping the same on the cars of defendant's road; that said pens have no

floors, nor have they or said shoots any appliances for keeping them clean; that during every season, and at all times, the defendant confines large numbers of hogs and cattle in said pens, which they are constantly shipping for various persons to Cincinnati and other cities; that they keep up a constant, loud, and hideous noise, squealing, grunting, and lowing, which disturbs the whole neighborhood, penetrating every room in plaintiff's hotel and boarding house, disturbing the sleep of him and his family, and the rest and sleep of his customers, and destroying the comfort and enjoyment of his said property; that said shoots were erected within six feet of the windows of the dining room and kitchen of said plaintiff's said hotel and boarding house, and darken the same; that defendant never cleans out or cleanses the said shoots and pens in any way, but for ten years they have been, and still are, a nuisance, from accumulations of decaying and fetid matter, dead hogs, and cattle, and putrid carcasses of the same; that there arises therefrom a sickening, disgusting, and unhealthy stench and effluvium, which penetrate the plaintiff's dining room and all parts of his hotel and boarding house, at all hours of the day and night, and which are exceedingly noxious and injurious to the health of said plaintiff, and that of his family, and offensive to the sight and nostrils of all who patronize said plaintiff's hotel and boarding house; by reason of which the said pens and shoots are, and for ten years have been, a nuisance to all the neighborhood, and the plaintiff's said property is thereby greatly depreciated in value, and the comfortable enjoyment of the same interfered with and destroyed, and the plaintiff's health and that of his family is greatly injured and likely to be destroyed if said nuisance is continued; that much custom has been driven from plaintiff's hotel, and his business has been greatly injured, and if said nuisance shall be continued, will be wholly destroyed. Prayer for damages, that the nuisance be abated, and the defendant enjoined from maintaining or continuing the same.

The second paragraph alle es that the plaintiff was the

owner of the same real estate mentioned in the preceding paragraph; that at the time plaintiff purchased his lot and erected said hotel the defendant owned said stock lots, and had previously erected certain hog and cattle pens thereon adjoining the plaintiff's lot, in which the defendant, by her agents, directed shippers of hogs and cattle to confine the same until they could be shipped to market; that until within six years last past there were but few hogs and cattle confined in said pens, and no serious inconvenience was felt in the community, nor by the plaintiff thereby; that the shipment of hogs and cattle on the defendant's cars and road from said pens has gradually increased, so that now, and for six years last past, large numbers of hogs and cattle have been shipped thereon, and large numbers have been confined in said pens; that the pens were originally erected on two sides of plaintiff's lot and adjacent thereto; that about five years ago the defendant changed the shoot leading from said pens, which, before the change, was about one hundred yards from the plaintiff's house, and erected the same within ten feet of the windows of the dining room and kitchen of said plaintiff's hotel and boarding house, against which the plaintiff remonstrated, and, after the change had been made, notified the defendant to remove the same, which it wholly failed and refused to do; that the shoot, as it now is, is parallel with the plaintiff's dining room, kitchen, and hotel, eighty-four feet, and only ten feet from the same, and darkens all the windows of the said dining room and kitchen. The paragraph proceeds to state the manner in which the pens and shoot have been kept, and how they have annoyed and injured the plaintiff, substantially as in the preceding paragraph, and concluding with a similar prayer.

The third paragraph alleges a nuisance to the plaintiff's said real estate from the same causes, differing in some of its particulars.

The fourth paragraph alleges that the defendant built an embankment on the defendant's land, obstructing the flow of the surface-water and causing a pond of water on the de-

fendant's land, which gathers the filth, etc., from said pens, and causes foul stenches, etc., injurious to the health of plaintiff and his family, and to his said real estate and business in connection with his said property.

The defendant demurred separately to each of the paragraphs of the complaint, for the reason that they did not state facts sufficient to constitute a cause of action. This demurrer was overruled by the court, and an exception was taken by the defendant.

The defendant answered, first, a general denial of the complaint; second, that the several supposed causes of action in the complaint mentioned did not either of them accrue within six years next before the commencement of this action; third, that the said hog and cattle pens were built and erected and said changes made therein, as alleged in the first, second, and third paragraphs of said complaint, and said embankment causing the alleged flow of water to the plaintiff's lot, as alleged in the fourth paragraph of said complaint, was made by the Ohio and Mississippi Railroad Company, and not by this defendant, and that the same were so made, erected, built, changed, and used by said company up to the first day of January, 1869, when said corporation ceased to exist; and defendant pleads the same in bar of all damages, if any, sustained by plaintiff on account of any and all said alleged grievances up to said first day of January, 1869; fourth, that as to the first, second, and third paragraphs of the complaint, and as to so much of said paragraphs as allege offensive and fetid smells arising from said pens and alleged injury to the health of the plaintiff, his family, boarders, etc., and injury to the rental value of plaintiff's property, and alleged damages to him on account of keeping and using said pens, that they are wholly caused by the plaintiff's own negligence in keeping a privy on said lot, near said pens, in such manner as to allow it to overflow and the contents to run into said pens, and by throwing the slops, etc., from his said hotel and kitchen into an alley between said hotel and kitchen and the said pens, in such manner

that the same flow into said pens and produce said smells, etc.

The plaintiff demurred separately to the second, third, and fourth paragraphs of the answer, for the reason that they did not state facts sufficient to constitute a defence to the action. The court sustained the demurrer to the second paragraph, and overruled those to the third and fourth. The defendant excepted.

The plaintiff replied, first, a general denial; second, to the third paragraph of the answer that said Ohio and Mississippi Railway Company was consolidated with said Ohio and Mississippi Railroad Company on the 1st day of January, 1869, and that the said companies have, since the consolidation, been keeping and maintaining the several nuisances mentioned in plaintiff's complaint, and operating certain railroads under the name and style of the Ohio and Mississippi Railway Company; third, to the same paragraph of the answer, that on or about the 1st day of January, 1869, the said Ohio and Mississippi Railroad Company, which had made and erected said hog and cattle pens and shoot, changed its name to the Ohio and Mississippi Railway Company, and under said name has since continued the several nuisances mentioned in the complaint; fourth, to the same paragraph of the answer, that the said Ohio and Mississippi Railway Company is owned, operated, and controlled by the same stockholders, board of directors, managers, president, and employees that owned, operated, and controlled the said Ohio and Mississippi Railroad Company, and that said corporation is one and the same corporation; fifth, to the same paragraph of the answer, that the Ohio and Mississippi Railroad Company owned, operated, and controlled said road at the time of the erection of said pens and the making of said pond, and that the defendant has succeeded to all the franchises, rights, and liabilities of said Ohio and Mississippi Railroad Company, and has ever since continued said nuisances as aforesaid.

The defendant demurred to the fifth paragraph of the re-

ply, for the reason that it did not state facts sufficient to constitute a reply; this demurrer was overruled, and the defendant excepted, but no question is made in this court on this ruling.

Thereupon there was a trial by a jury, a general verdict for the plaintiff, and answers to interrogatories, as follows:

" 1st. Was there a nuisance at the beginning of this suit? and if so, how long has that nuisance existed, and by whom was the same created, and by whom has it been maintained? Answer. There was a nuisance at the commencement of this suit, and it has existed two years, and was created and maintained by the Ohio and Mississippi Railroad Company and the Madison and Indianapolis Railroad Company.

" 2d. In case you find there is a nuisance, did the acts of the plaintiff or his servants contribute to the creation or maintenance of the same? Answer. They did.

" 3d. When were the hog pens erected which are complained of, and when was the plaintiff's hotel built? Answer. The hog pens have been built about twelve years, and the hotel about nine years.

" 4th. To whom did the lots belong upon which the pens were erected, and who erected the pens? Answer. The pens were erected and the lots owned by the Ohio and Mississippi, and Madison and Indianapolis Railroad Companies.

" 5th. By what railroad companies have the pens been used since their erection, if any? Answer. By the Ohio and Mississippi, and Madison and Indianapolis Railroad Companies."

The defendant moved the court, in writing, to render judgment in its favor, first, for the reason that the answers to the first, fourth, and fifth special interrogatories show that if there was a nuisance erected and maintained, etc., as stated in the complaint, it was by other and different railroad companies than the defendant, and that the lots where the same was erected, etc., were owned by other and different railroad companies; and, second, because the answer to the

second interrogatory shows that the plaintiff contributed to the erection and maintenance of said nuisance.

This motion was overruled, and the defendant excepted.

The defendant then moved for a new trial, and this motion was also overruled, and he again excepted. The court then rendered judgment for the plaintiff, according to the general verdict of the jury, and the defendant appealed.

The following are the errors assigned: First, the court erred in overruling appellant's demurrer to the complaint; second, in sustaining plaintiff's demurrer to the defendant's answer of the statute of limitations; third, in refusing to instruct the jury as asked by the defendant, and in the instructions given; fourth, the court erred in overruling the defendant's motion for judgment on the special findings of the jury; fifth, in overruling defendant's motion for a new trial; sixth, in rendering judgment enjoining defendant from the use of said property.

The first alleged error consists of the overruling of the demurrers to the several paragraphs of the complaint. Counsel for the appellant say:

"The complaint itself only charges noise and smells. True, it alleges the smell to be noxious and detrimental to health. If so, it would be within the statutory definition of a nuisance, but the proof does not come up to the allegations in the complaint, only showing noise and smell. The great preponderance of testimony is that the smells are not injurious to health, or even to the enjoyment of life. Noise is not of itself a nuisance, even in a general sense, much less should it be in this case. An unpleasant smell is not of itself a nuisance, in general, and should much less be in this case."

The statutory definition of a nuisance is this: "Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." "Such action may be brought by any person whose property

The Ohio and Mississippi Railway Company *v.* Simon.

is injuriously affected, or whose personal enjoyment is lessened by the nuisance." "Where a proper case is made, the nuisance may be enjoined or abated, and damages recovered therefor." 2 G. & H. 288, secs. 628–630. It seems to us quite clear that the different paragraphs of the complaint are sufficient. This point seems not to be much relied upon by counsel for the appellant, as we infer from the little which is said about it in their brief. It seems to us that the quotation of the statute is a sufficient answer to this assignment of error.

The next question relates to the ruling of the court in sustaining the demurrer of the plaintiff to the second paragraph of the defendant's answer, which sets up the statute of limitations of six years. The question is, what is the nature of the injury, and what is the period of limitation? We regard it as an injury to real property. Mr. BLACKSTONE, vol. 3, p. 215, original paging, says: "A third species of real injuries to a man's lands and tenements is by nuisance. Nuisance, *nocumentum*, or annoyance, signifies anything that worketh hurt, inconvenience, or damage. And nuisances are of two kinds: public or common nuisances, which affect the public, and are an annoyance to all the king's subjects; for which reason we must refer them to the class of public wrongs, or crimes and misdemeanors; and private nuisances, which are the objects of our present consideration, and may be defined, anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another." The learned commentator then proceeds to consider nuisances as they affect, first, corporeal hereditaments, and, secondly, as they affect incorporeal hereditaments; and, in speaking of the former, says if one keep his hogs or other noisome animals so near the house of another that the stench of them incommodes him and makes the air unwholesome, this is an injurious nuisance, as it tends to deprive him of the use and benefit of his house. Being an injury to real property, we think the action to recover damages therefor must, according to the third subdivi-

sion of section 210, 2 G. & H. 156, be commenced within six years after the cause of action accrued, and cannot be commenced afterward.   But the second paragraph of the answer alleges that the several causes of action in the complaint mentioned did not, nor did either of them, accrue within six years next before the commencement of the action. That paragraph of the answer was therefore a good bar to the action, and the court should not have sustained the demurrer thereto.   But it is contended that the third paragraph of the answer was such as that the defendant might set up the same defence under it as under the second ; that the defendant cannot therefore complain of the sustaining of the demurrer to the second; and that the jury found that the nuisance had existed for two years last past.   The third paragraph is not a defence of the statute of limitations, but, as we understand it, it is a denial that the defendant was guilty of the nuisance prior to January, 1869.   The jury did not find that the defendant had erected or continued the nuisance within two years, but they did find that the Ohio and Mississippi Railroad Company and the Madison and Indianapolis Railroad Company had done so.   This action is not against either of these companies.'  We cannot say that the defendants suffered no damage from the sustaining of the demurrer to the second paragraph of its answer.   As that action of the court was, in our opinion, clearly wrong, we should be able distinctly to see that no damage resulted to the defendant from the error, or he should have the benefit of it in a reversal of the judgment.

The fifth assignment of errors seems naturally to present itself for consideration next in order.   Should the court have sustained the motion of the defendant for judgment in its favor on the special findings ?   By the answer to the fourth interrogatory, the jury found that the lots belonged to the Ohio and Mississippi and the Madison and Indianapolis Railroad Companies, and that the pens were erected by those companies.   By the answer to the fifth interrogatory, they found that the pens have been used since their erection by

the same companies; and by the answer to the first interrogatory, they found that there was a nuisance at the beginning of the suit, and that it had been erected and was maintained by the Ohio and Mississippi Railroad Company and the Madison and Indianapolis Railroad Company. Although it may not be absolutely conclusive from these answers that the nuisance complained of was not created by the defendant, yet it seems reasonable so to construe the answers of the jury; for if the nuisance complained of was erected and continued, at the time the action was brought, by the Ohio and Mississippi Railroad Company and the Madison and Indianapolis Railroad Company, it could hardly have been erected and continued by the Ohio and Mississippi Railway Company, which we must understand to be, and is conceded to be, a different corporation. Without, however, deciding this question, or any remaining questions presented, we will reverse the judgment for the wrong ruling on the demurrer to the second paragraph of the answer, and let the case go back for another trial.

The judgment is reversed, with costs, and the case remanded, with instructions to overrule the demurrer to the second paragraph of the answer, and for a new trial.

*C. E. Walker* and *J. D. New*, for appellant.

*T. C. Bachelor* and *A. G. Smith*, for appellee.