*W. Wallace* and *J. S. Harvey,* for appellees.

---

## Lucas et al. *v.* Marine.

NUISANCE.—*Injury to Real Estate.*—*Statute of Limitations.*—In an action for injury to real estate by erecting and maintaining a dam and flowing the water over the plaintiff's land, so as to create a nuisance, an answer which alleges that the cause of action did not accrue within six years is good.

PRACTICE.—*Sealing up the Verdict.*—Where a bill of exceptions showed that the jury agreed upon their finding during the adjournment of court at night,

and that the judge, upon being so informed, instructed the bailiff to direct them to seal up their verdict and bring it into court in the morning, which they did;

*Held,* that this did not entitle either party to a new trial, it not appearing that the jury separated until after return of their verdict.

APPEAL from the Grant Circuit Court.

DOWNEY, J.—This action was commenced by Sarah Lucas, Senior, Sarah Lucas, Junior, Eliza J. Lucas, Mary Lynch, formerly Mary Lucas, and her husband, Edward W. Lynch, against the appellee. They allege that they are the owners and entitled to the possession of a certain quarter section of land described in the complaint, which descended to them from Basil Lucas, deceased, who was the husband of said Sarah, Senior, and father of said Sarah, Junior, Eliza J., and Mary. They further allege that the defendant unlawfully and wrongfully erected on said land a dam, across a stream that from time immemorial flowed through said land, commonly called Barren Creek, which dam caused the water of said stream to back on and overflow the said plaintiffs' lands, preventing forty acres thereof from being used or cultivated for ten years prior to the death of said Basil Lucas and five years since, and which caused the plaintiffs and their said ancestor to become sick and diseased, to the damage of said plaintiffs two thousand dollars.

They allege in a second paragraph of the complaint, that the defendant has, for twelve years last past, unlawfully maintained on the said land a certain nuisance, to wit, a dam and mill-race on and across a stream of water which has from time immemorial flowed through said land, which caused said water to back on and overflow said land, rendering the same of no value, and causing it to become and continue unhealthy. They also allege that the said dam and overflowing of said land is a public nuisance, causing the place and country around and about the same to be unhealthy, and the citizens about the same to be diseased and sickly; by reason of which they say they have been damaged two thousand dollars. And by reason of the matters

alleged in both of the paragraphs, they claim to have been damaged in the sum of two thousand dollars, for which amount they demand judgment, and also demand that said dam be removed and said nuisance be abated.

The defendant answered:

First. A general denial.

Second. That the said Basil Lucas, deceased, and Asa Marine, from whom the defendant derives his title, entered into the following contract:

"I, Basil Lucas, bind myself to make a deed of conveyance to Asa Marine for a certain lot of land, for the purpose of building a mill, and the room necessary for the water to and from said mill, by the said Asa Marine paying to said Basil Lucas the sum of fifty dollars, the boundaries to be ascertained before the deed is made, the dam to be eighteen inches high.

"March 31st, 1849.                    BASIL LUCAS."

A note executed by Asa Marine to Basil Lucas for the fifty dollars, of the same date with the above, and payable on the 25th day of December next thereafter, is also set out in this paragraph. It is alleged that said Asa Marine paid the amount of money, according to the said promissory note, and that the boundaries of said land were ascertained by survey in the presence of said Basil Lucas, and that he confirmed the same, was satisfied therewith, and agreed thereto. It is further alleged that said Basil Lucas put the said Asa Marine into possession of said land, in pursuance of said contract, and that he held the same till he conveyed it to the defendant; that afterward, by consent of said Basil Lucas, said dam was increased in height twelve inches, and has been so maintained.

Third. That the defendant and those under whom he claims have been in the quiet and peaceable possession of said premises for more than twenty years next before the commencement of the action.

Fourth. That the defendant and those under whom he claims have, for more than twenty years next before the

commencement of the action, adversely and continuously enjoyed and used as their own the mill-dam and easements thereto belonging, under claim of right, and the right to flow the water back upon said lands to the full extent to which the same has been used by said defendant; wherefore, etc.

Fifth. That said Basil Lucas gave said Asa Marine the right to erect and maintain said dam at the same height that it was at any time before the commencement of this action; that relying on said permission, those from whom defendant claims title expended large sums of money, to wit, five thousand dollars, in the erection of said mill and dam, of all of which said plaintiffs had notice before they became possessed of said lands or purchased the same; wherefore the said plaintiffs are estopped, etc.

Sixth. That the defendant purchased said mill, dam, and easements of one Asa Marine, who was the owner of the same; that the plaintiffs are the heirs-at-law of Basil Lucas, who was the owner of said lands; that during the lifetime of said Basil Lucas, Asa Marine, being desirous to erect a mill, and obtain the room necessary to flow the water to and from said mill when so erected, and construct a dam for the said mill, conferred with said Basil Lucas upon the subject of said mill, dam, etc., and that said Lucas then and there verbally gave the said Asa Marine, in consideration of fifty dollars paid to said Lucas by said Marine, the right to erect said dam and maintain the same at the same height it was at any time before the commencement of this suit; and that relying upon the permission of the said Lucas, said Marine, with the full knowledge and consent of the said Lucas, at an expense of five thousand dollars, erected said mill-dam and constructed the mill-race necessary for said mill, and so continued the same during all the lifetime of said Basil Lucas; of all of which the plaintiffs had notice, etc.; wherefore the plaintiffs are estopped, etc.

Seventh. That the cause of action did not accrue to the

said plaintiffs within six years next before the commencement of the action.

The plaintiffs demurred to the second, fourth, fifth, sixth, and seventh paragraphs of the answer. The demurrer to the seventh paragraph appears to have been overruled, but so far as we can see, no disposition of the demurrers to the other paragraphs was ever made.

The plaintiff replied to all the paragraphs, first, by a general denial; and, second, that all license and consent given by said Lucas in his lifetime was withdrawn and revoked long before Asa Marine or the defendant made said improvements as in the answer alleged.

A trial by jury resulted in a general verdict for the defendant, and also a finding that the maintenance of the dam does not injure the health of the neighborhood and is not a public nuisance.

A motion by the plaintiffs for a new trial was made and overruled, and judgment rendered for the defendant. The plaintiffs appeal, and have assigned six errors:

1. Overruling the plaintiffs' motion to set aside the verdict of the jury.

2. Overruling the plaintiffs' motion for a new trial.

3. Overruling the plaintiffs' demurrer to the second paragraph of the answer.

4. Overruling the demurrer to the third, fourth, and sixth paragraphs of the defendant's answer.

5. Overruling the demurrer to the seventh paragraph of the answer.

6. Refusing to give charges asked by the plaintiff.

As we have already said, the record does not show any ruling by the court upon any of the demurrers except that to the seventh paragraph of the answer. There does not appear to have been any demurrer to the third paragraph of the answer.

We see no objection to the seventh paragraph of the answer. It sets up the statute of limitations of six years, which, we think, is applicable to the case. 2 G. & H. 156,

sec. 210, third division; *The Ohio and Mississippi Railway
Co.* v. *Simon, ante,* p. 278.

The reasons for a new trial are, first, overruling the plain-
tiffs' demurrer to the second paragraph of the answer; sec-
ond, the same as to the third paragraph; third, same as to
the fourth paragraph of the answer; fourth, same as to the de-
murrer to the sixth paragraph of the answer; fifth, in allow-
ing the defendant to read in evidence the contract set up in
the second paragraph of the answer; sixth, in giving charges
one, two, three, four, five, and six; seventh, the verdict is
not sustained by the evidence; and, eighth, the court erred
in refusing a charge set out in the motion for a new trial.
Another reason, which is not numbered, is that the court
erred in allowing the jury to separate without consent of
the plaintiff, before they had returned their verdict. As to
the first four reasons for a new trial, counsel know, we pre-
sume, that the action of the court in overruling or sustain-
ing demurrers to the pleadings cannot be assigned as
reasons for a new trial. To assign reasons or cite authori-
ties in support of this proposition would surely be a work
of supererogation.

As to the fifth and seventh reasons, it is sufficient to say
that there is no bill of exceptions showing what evidence
was or was not given to the jury.

The charges which are copied into the record by the clerk
do not appear to have been excepted to in any way; nor
does it appear that any charges were asked and refused.
This disposes of the sixth and eighth reasons for a new trial.

The last reason is that which has no number. There is a
bill of exceptions as to this, which states "that the jury,
after retiring, failed to agree until about two o'clock in the
morning, after they had so retired; the bailiff who had them in
charge came to the room of the judge, at the hotel, and in-
formed him that the jury had agreed; that the judge directed
the bailiff to tell the jury to seal up their verdict, deliver it
to the foreman, and return the same into court the next
morning; that at the meeting of the court next morning, the

jury returned their verdict; which was then received; and thereupon the plaintiff immediately objected to the verdict, upon the ground that the action of the court in the premises was without the knowledge or consent of, the plaintiffs or their counsel, who moved to set aside said verdict, and for a new trial, which was overruled, and an exception taken."

We do not see that the mere sealing up of the verdict and handing it to the foreman, if that was done, could have injured the plaintiffs. It is not shown by the bill of exceptions that the jury separated or left their room until they went into court to deliver their verdict. The bill of exceptions does not show the facts necessary to present the question which is discussed by counsel; that is, whether or not, if the jury had separated in consequence of such message sent to them by the judge, it would have been good ground upon which to set aside the verdict and grant a new trial.

The judgment is affirmed, with costs.*

*J. Brownlee* and *H. Brownlee*, for appellants.

*A. Steele* and *R. T. St. John*, for appellee.

*Petition for a rehearing overruled.