Terry HEATH, et al., Plaintiffs,

v.

WAL–MART STORES, INC., et al., Defendants.

No. NA99–63–C B/S.

United States District Court, S.D. Indiana, New Albany Division.

Sept. 26, 2000.

Peter M. Burrell, Schwartz Manes & Ruby, Cincinnati, OH, Daniel J. Temming, Robbins Kelly Patterson & Tucker, Cincinnati, OH, James L. Whitlatch, Bunger & Robertson, Bloomington, IN, for Plaintiffs.

Larry L. Eaton, Eaton & Romweber, Versailles, IN, Peter J. Sewell, Sewell & Associates, Louisville, KY, James I. Weprin, Froelich & Weprin Co., Dayton, OH, for Defendants.

### ENTRY DENYING SUMMARY JUDGMENT TO DEFENDANT WAL–MART AND GRANTING SUMMARY JUDGMENT TO DEFENDANTS CESO AND CLEVELAND

BARKER, Chief Judge.

In 1994 and 1995, Defendant Wal–Mart Stores, Inc. ("Wal–Mart") developed and executed plans to build a retail store, parking lot and access roads in Dearborn County, Indiana. Wal–Mart contracted with Defendant C.E.S.O., Inc. ("CESO") to produce a civil site plan for this construction project. Defendant Cleveland Construction, Inc. ("Cleveland") was hired for the construction of the store and parking lot.

The Dearborn County Wal–Mart store is located near Wilson Creek, a tributary of the Ohio River. Plaintiffs Terry L. Heath and Martha J. Heath also own land along Wilson Creek, upstream from the Wal–Mart store. They have a farm totaling 110 acres. At least since the completion of the Wal–Mart construction project, Plaintiffs have experienced flooding. Injuries to the Heath's property were especially severe during two floods, one in January of 1996 and another in March of 1997.

On April 19, 1999, Plaintiffs filed a suit based on nuisance for damages and an injunction against Wal–Mart, CESO, and Cleveland. CESO filed a motion for summary judgment on January 3, 2000. ("CESO Motion"). Cleveland's Motion for Summary Judgment ("Cleveland Motion") was filed on February 1, 2000, and Wal–Mart followed the other Defendants' lead by filing its Motion for Summary Judgment ("Wal–Mart Motion") on June 30, 2000. The issues have been extensively briefed by all parties.

For the reasons set forth below, Wal–Mart's Motion for Summary Judgment is *DENIED*. In addition, Wal–Mart's Motion to Strike the Affidavit of James R.

Huitger is *DENIED.* CESO's and Cleveland's Motions for Summary Judgment are *GRANTED.*

### Factual Background

The primary disputed issue in this lawsuit concerns the cause of the flooding of the Heath's property. Plaintiffs agree with Wal–Mart's Statement of Facts: (1) that approximately 20 acres of the Heaths' land lies in the flood plain; (2) that Plaintiffs knew that part of the land was in the flood plain when they bought it; and (3) that the Heaths' barn and shed were built in the flood plain after they bought the land. Plaintiffs' Memorandum in Opposition to Defendant Wal–Mart Stores, Inc.'s Motion for Summary Judgment ("Pls.' Opp. to Wal–Mart Mot.") at 1–2, ¶¶ 1–3. Defendant Wal–Mart maintains that flooding occurred on the Heaths' property prior to the construction of the store and parking lot. Defendant Wal–Mart's Memorandum in Support of Motion for Summary Judgment ("WalMart Memo.") at 3, ¶ 4. Plaintiffs counter that any flooding prior to the Wal–Mart construction was flash flooding in which the water disappeared from the fields within hours. Terry Heath Deposition ("Heath Depo.") at 14–15. They allege that flash flooding is very different from the flooding they now experience in which Wilson Creek backs up and water stays on the fields until the creek returns to lower levels. *Id.*

Plaintiffs blame the flooding they have experienced since 1996 on placement of fill in the floodway of Wilson Creek by Defendants. Pls.' Opp. to Wal–Mart Mot. at 3, ¶ 12 (citing James R. Huitger Affidavit, ¶ 4). According to the Heaths, in or about November 1995, Defendants placed fill dirt and construction materials in the Wilson Creek floodway. Plaintiffs' Memorandum in Opposition to Defendant CESO, Inc's Motion for Summary Judgment (Filed January 3, 2000), and Defendant Cleveland Construction's Motion for Summary Judgment (Filed February 15, 2000) ("Pls.' Opp. to CESO and Cleveland Mot."), ¶ 19;

Carl D. Walker Affidavit, 4/12/2000, ¶¶ 2–3. The materials then collapsed into the Wilson Creek channel and obstructed the natural flow of this body of water. Walker Affidavit, 4/12/2000, ¶¶ 2, 12. Plaintiffs maintain that the fill dirt and construction materials extend in the Wilson Creek channel for approximately 365 feet and extend into the floodway for approximately 1,600 feet. *Id.* at ¶ 9. Walker, a professional engineer and surveyor and a principal in the firm of Savage, Walker & Associates, Inc., affirmed that an active slide, approximately 65 feet in length, continues to occur. *Id.* at 10. James R. Huitger, a project manager at Savage, Walker & Associates, Inc., opines that the fill and other materials in the Wilson Creek floodway and the resultant "increase in the water surface elevations of Wilson Creek [have] caused adverse effects to occur on the property of Terry and Martha Heath in the presence of severe local storms." Huitger Aff., ¶ 4.

In his affidavit, David Oakes, President of Defendant CESO, admits that, in November of 1995, during construction excavation, "rapid movement of earth caused underlying soft soils to bulge into Wilson Creek." Oakes Aff., 12/30/1999, ¶ 8. The parties disagree concerning which Defendant performed the excavation work during the construction of the Wal–Mart store and parking lot. CESO states that Wal–Mart hired Cleveland to perform excavation work according to CESO's plans. CESO Memo. at 2, ¶ 4. Plaintiffs agree that Cleveland did excavation work for the Wal–Mart store. Pls. Opp. to CESO and Cleveland Mot. at 2, ¶ 4. CESO cites the Heaths' complaint for this "fact"; Plaintiffs do not cite any source on the point. Cleveland states that "[a]ll excavation and grading work was performed by subcontractee, Dineen Excavating." Cleveland Statement of Material Facts, ¶ 4. Support for this information comes from the affidavit of Keith Ziegler, Vice President of Construction for Cleveland Construction, Inc., which was attached to Cleveland's Motion.

Ziegler Aff., ¶ 5. Plaintiff does not respond directly to Cleveland's Statement of Material Facts.

Given that construction excavation occurred and that some materials ended up in Wilson Creek, Oakes also admits that a "restriction"in the creek occurred.[1] Oakes Aff., 12/30/1999, ¶ 8. The parties agree that CESO contacted the Indiana Department of Natural Resources ("IDNR") to discuss remedying the problem. *Id.* at ¶¶ 8–9; Walker Affidavit, 4/12/2000, ¶ 3. In an effort to clear the land slide material from the channel of Wilson Creek, Defendants considered two courses of action. At first, CESO, on behalf of WalMart, submitted application FW–17332 for the permits necessary to relocate a portion of the creek. Oakes Aff., 12/30/1999, ¶ 11; Walker Aff., 4/12/2000, ¶ 3. According to CESO, Wal–Mart and CESO concluded that the "plan would have taken too long to obtain approval" and that "Wal–Mart needed faster action." Defendant CESO Inc.'s Reply to Plaintiff's Memorandum in Opposition to CESO's Motion for Summary Judgment ("CESO Reply") at 5; *see also,* Walker Aff., 4/12/2000, ¶ 4. CESO and Wal–Mart then "created a plan to excavate material from the existing channel of Wilson Creek." Oakes Aff., 12/30/1999, ¶ 12. According to Defendants, the IDNR approved this plan on June 18, 1996, and in September of 1996, CESO removed material and re-estab-

lished vegetation on the banks of the creek. *Id.* at ¶ 13. Defendants point out that as of September 30, 1996, John Douglas Hall, II, Field Engineer in the Division of Water of the IDNR, had inspected the site and determined that "the restoration of the channel bulge had been completed." Wal Mart's Memo. at 4 (citing Hall Aff., ¶¶ 7–8). Plaintiffs dispute this determination, stating that the channel bulge was not remedied and that encroachment of fill into the floodway and channel continues to this day. Pls.' Opp. to Wal–Mart Mot. at 2–3, ¶ 1 (citing Walker Aff., 4/12/200, ¶ 7).

Particularly because of its relevance to Defendants' statute of limitations defense, the parties also dispute the timing and extent of the damages Plaintiffs suffered. Plaintiffs allege severe damage to their personal property due to flooding in January of 1996 and March of 1997. Plaintiffs' Answers to Defendants [sic] C.E.S.O., Inc.'s First Requests [sic] for Production of Document [sic] Directed to the Plaintiffs ("Pls.' Ans. to Doc. Req.") Compilations attached to Request 10. Rainfall in 1996 and 1997 appears to have been particularly heavy.[2] Plaintiffs also allege that flooding caused losses in their hay crop and water damage to their barn, shed and fencing in 1998. Plaintiffs' Answers to Defendants [sic] C.E.S.O., Inc.'s First Set of Interrogatories Directed to the Plaintiffs ("Pls.' Ans. to Interrogs.") 4–5, 10. Plaintiffs

---

**1.** Facts admitted by CESO are also admitted by Wal–Mart. Wal–Mart Memo. at 1 (incorporating "[t]he Statement of Material Facts and supporting exhibits filed herein by CESO, Inc., (CESO) in support of its Motion for Summary Judgment.").

**2.** The parties have "flooded" the Court with arguments about how bad the storms really were in 1996 and 1997 and about whether the Court can take judicial notice of the severity of the storms. *Compare* Oakes Aff., 4/28/2000, ¶ 10 ("In 1996 and 1997, the natural storm events exceeded the 100 year storm rate and caused flooding in the Wilson Creek floodplain area.") *with* Huitger Aff., ¶ 3 ("Per statistics of the Army Corps of Engineers, Louisville District, the flooding of the Ohio River in 1997 was not a 100 year storm/flood,

but was at approximately a 45 year storm level."); *also compare* CESO Reply at 2 ("The court may indeed take judicial notice of the rainfalls which plagued the Midwest in 1996 and 1997 as their occurrence is capable of accurate and ready determination from unquestionable authority.") *with* Pls.' Opp. to CESO and Cleveland Mot. at 2 ("Plaintiffs deny the Court can take judicial notice of 1996 and 1997 rainfalls."). The Court finds that whether the storms exceeded the 45–year or the 100–year storm rate is not a pivotal question in disposing of these summary judgment motions. The Court understands that rainfall was quite heavy both years, and will require the parties to provide the Court with reliable figures should the case proceed to trial.

claim damages recur to today because Plaintiffs cannot use the barn during times of flooding. Pls.' Ans. to Interrogs. 10.

### Standard for Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue of material facts exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir.1992). Summary judgment is required only if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### Analysis
#### Liability of Wal–Mart

█ Plaintiffs bring this action against Defendants for nuisance. Complaint, ¶ 4. The law of Indiana provides that "[w]hatever is ... an obstruction of the free use of property so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind.Code § 34–9–1–1 (1988). Indiana case law specifically provides for a cause of action when a lower riparian landowner "obstruct[s] a natural watercourse to the detriment of the upper landowner." *Trowbridge v. Torabi*, 693 N.E.2d 622, 628 (Ind.Ct.App.1998). Plaintiffs sue Wal–Mart under this theory.

### Statute of Limitations

█ For Plaintiffs to succeed in their suit, they must first rebut Wal–Mart's argument that the Heaths' cause of action is barred by a two-year statute of limitations. In Indiana, "[a]n action for ... injury to personal property ... must be commenced within two (2) years after the cause of action accrues." Ind.Code § 34–11–2–4 (1998). The statute of limitations runs from the time of injury. *Ferdinand Furniture Co., Inc. v. Anderson*, 399 N.E.2d 799, 802 (Ind.Ct.App.1980). Defendant Wal–Mart characterizes Plaintiffs' injuries as being limited to damages to their personal property occurring in January of 1996 and March of 1997. Wal–Mart Memo. at 6. This litigation was not commenced until April 19, 1999, more than two years after the last damages suffered by Plaintiffs, according to Wal–Mart. Hence, Wal–Mart argues, Defendant is entitled to summary judgment because the statute of limitations has expired.

Plaintiffs counter that § 34–11–2–4 does not apply to a nuisance claim and that a six-year statute of limitations governs nuisance actions for damages both to personal property and also to real property. Pls.' Opp. to Wal–Mart Memo. at 8 (citing *Ohio & M. Ry. Co. v. Simon*, 40 Ind. 278 (Ind. 1872); *Lucas v. Marine*, 40 Ind. 289 (Ind. 1872); *Sherlock v. Louisville, N.A. & C. Ry. Co.*, 115 Ind. 22, 17 N.E. 171 (1888); *Peck v. City of Michigan City*, 149 Ind. 670, 49 N.E. 800 (1898); *Kelly v. Pittsburgh, C., C. & St. L. Ry. Co.*, 28 Ind.App. 457, 63 N.E. 233 (1902)). However, none of the cases Plaintiffs cited for this proposition post-date the enactment of the statutes of limitations currently governing causes of action in Indiana. While these nuisance cases may make no distinction between damages to personal property and damages to real property for the purposes of the statute of limitations (and even that proposition can be contested) [3], the current

---

3. For instance, in *Kelly*, 28 Ind.App. 457, 63

N.E. 233, the only property alleged to have

code clearly makes such a distinction. A two–year statute of limitations controls damages to personal property. Ind.Code § 34–11–2–4. "Actions for injuries to property other than personal property [i.e., real property] ... must be commenced within six (6) years after the cause of action accrues." Ind.Code § 34–11–2–7 (1998). If Plaintiffs' claims were limited solely to personal property damage suffered prior to April 19, 1997, Wal–Mart's statute of limitations defense would dispose of the case.

■ However, there is more to the story. The Plaintiffs have raised a genuine issue of material fact as to whether their property, other than personal property, was damaged within the six years prior to the date of filing. For instance, the Heaths claim that they were denied free use of their property for its intended purpose, to wit, producing hay,[4] when it was flooded in 1996, 1997 and 1998. Pls.' Ans. to CESO Interrogs. 4. Defendants state that "[t]he *majority* of the Plaintiffs' property injuries occurred in two floods." CESO Memo. at 9 (emphasis added). It is true that most of the damages shown so far by the Plaintiffs were personal property losses, but Wal–Mart has not rebutted the Heaths' evidence that some of their losses were to land and other property covered by the six-year statute of limitations. Plaintiffs' cause of action for damages to property other than personal property and for an injunction seeking removal of the Wilson Creek obstruction to prevent further damage to their property is not barred by the statute of limitations.

■ In addition, continued flooding and damage to their personal property is a recurring nuisance. In *Keane v. Pachter*, 598 N.E.2d 1067 (Ind.Ct.App.1992), Keane, the plaintiff, lived in a condominium below the Pachters. The Pachters had marble floors, and when they walked on the floor,

the noise was clearly audible in Keane's condominium, constituting a nuisance. *Id.* The appellate court upheld the trial court's determination that "the injury due to the noise was of a recurring or intermittent nature" and granted an injunction requiring the installation of carpet and damages for injuries suffered within the statute of limitations. *Id.* at 1072–74. Keane did not receive damages for the loss of enjoyment of his property that he suffered during the years outside the statute of limitations, but he did receive damages for the more recent years even though the injury was of the same nature throughout. *Id.* The *Keane* court disagreed with the defendants' contention that the nuisance was "permanent" when the marble floors were installed. *Id.* at 1072. Likewise, the nuisance here was not permanent when the fill and construction materials were allegedly dumped in the floodway. The nuisance is recurring each time Wilson Creek backs up and Plaintiffs suffer flood damage to their property. An appellate court also upheld a trial court's determination that obstructing debris and sidewalk damage on plaintiff's property caused by a fire to a neighbor's home could constitute a continuing nuisance under Indiana law. *Palacios v. Kline*, 566 N.E.2d 573, 574 (Ind.Ct.App.1991). Following the reasoning of *Keane* and *Palacios*, we conclude that Plaintiffs are entitled to seek to recover for damages to personal property suffered after April 19, 1997. Losses to personal property prior to that date are barred by the statute of limitations.

Wal–Mart is not entitled to summary judgment on the basis of its statute of limitations arguments.

*Merits of Wal–Mart's Defense*

While Plaintiffs for the most part survive the statute of limitations defense, the Heaths still must establish that the law prohibiting a lower riparian landowner

---

been damaged was land. No mention was made of personal property.

4. Terry Heath testified in his deposition that Plaintiffs' property is zoned for farming. Heath Depo. at 9.

from obstructing a natural watercourse applies to their case. Two main issues arise. First, they must show that the water allegedly flooding their land is from a natural watercourse. Second, they must show that Wilson Creek is obstructed and that the obstruction is responsible for the flooding they have experienced.

*Natural Watercourse*

We begin by addressing the common law distinction between a natural watercourse and surface water. Indiana case law is clear that nuisance law does not apply to surface water. *Pickett v. Brown*, 569 N.E.2d 706, 708 (Ind.Ct.App.1991). Instead, surface water is governed by the common enemy doctrine. *Argyelan v. Haviland*, 435 N.E.2d 973 (Ind.1982). Under this doctrine, "it is not unlawful for a landowner to improve his land in such a manner as to accelerate or increase the flow of surface water by limiting or eliminating ground absorption or changing the grade of the land." *Trowbridge v. Torabi*, 693 N.E.2d at 626 (citing *Argyelan*, 435 N.E.2d at 976). This principle applies even when the changes to the first landowner's land will "cause water either to stand in unusual quantities on adjacent lands or to pass into or over adjacent lands in greater quantities or in other directions than the waters were accustomed to flow." *Id.* (citing *Pickett*, 569 N.E.2d at 707). In contrast, as mentioned earlier, water in a natural watercourse is governed by a different rule. *Gasway v. Lalen*, 526 N.E.2d 1199, 1201 (Ind.Ct.App.1988) ("The law pertaining to natural watercourses prohibits a lower landowner from blocking or obstructing the natural flow of water through a watercourse."); *Trowbridge*, 693 N.E.2d at 628 ("Case law is clear that a lower landowner cannot obstruct a natural watercourse to the detriment of the upper landowner."). Wal–Mart does not dispute that it is the lower riparian landowner in relation to the Heaths. Therefore, it is essential to determine if the water allegedly plaguing the Heaths' land is surface water or water in a natural watercourse.

The case law defines surface water as "[w]ater from falling rains or melting snows which is diffused over the surface of the ground or which temporarily flows upon or over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channel." *Kramer v. Rager*, 441 N.E.2d 700, 705 (Ind.Ct.App.1982). A natural watercourse is "a course or channel consisting of well-defined banks and a bottom through which water flows in a definite direction for a substantial period each year." *Gasway*, 526 N.E.2d at 1201 (citations omitted). The parties agree that Wilson Creek is a natural watercourse. However, Wal–Mart attempts to question whether the water flooding the Heaths' land is surface water or water backing up due to obstruction of Wilson Creek. Reply to Plaintiffs' Memorandum in Opposition to Defendant Wal–Mart Stores, Inc.'s Motion for Summary Judgment ("Wal–Mart Reply") at 3. Plaintiffs mention in their brief that the landslide allegedly occurring on Wal–Mart property may cause a more rapid discharge of surface water, but they emphasize that the bulk of the flooding is due to water backing up from Wilson Creek. Pls.' Opp. to Wal–Mart Mot. at 7. Regardless of the parties' respective arguments in their briefs, the evidence submitted makes it clear that there is at least a genuine issue of material fact as to whether the water flooding Plaintiffs' land is water from a natural watercourse. In fact, Wal–Mart admits that before the bulge in Wilson Creek was allegedly removed in September of 1996, there was a "damming effect in the low channel flow of Wilson Creek." David Oakes Deposition ("Oakes Depo.") at 52. Also, Defendant attempts to blame the continued back up of Wilson Creek on high water levels in the Ohio River. Wal–Mart Memo. at 3; *see also* Oakes Depo. at 52 ("The flood that is occurring in Wilson Creek is actually a result of water building up in the Ohio River, then backing into that hollow area, into Wilson Creek."). Demonstrating that

Plaintiffs' flooding is due to water build up in another natural watercourse would relieve Defendant Wal–Mart of liability, but such proof may undermine Defendant's claim that the water flooding Plaintiffs' land is surface water.

### Obstruction and Flooding

To determine if there is a nuisance for which Wal–Mart can be held liable, the second question that must be answered is whether Wal–Mart caused or permitted an obstruction to the flow of Wilson Creek which is responsible for the flooding of the Heaths' property. *See generally, Gasway,* 526 N.E.2d at 1202 (parties disputed existence of obstruction and whether flooding was result of alleged obstruction). Wal–Mart contends that Wilson Creek is no longer obstructed. Alternatively, Wal–Mart maintains that the obstruction of Wilson Creek is not responsible for the flooding of Plaintiffs' land. The Heaths have established that a genuine issue of material fact exists as to both of these issues; therefore, Wal–Mart is not entitled to summary judgment.

Wal–Mart claims that Wilson Creek is no longer obstructed, relying on affidavits from Oakes and Hall. Oakes states that "material from Wilson Creek was removed during September, 1996; and the banks of the creek were stabilized and the vegetation reestablished." Oakes Aff., 12/30/1999, ¶ 13. Hall submitted an affidavit to the Natural Resources Commission of the State of Indiana, a copy of which is attached to CESO's Motion, stating that "[a]t my inspection on 9/30/96, I determined that the earth material and trees had been removed form the channel, a clear channel had been restored, and disturbed areas had been seeded and mulched." Hall Aff., ¶ 7. He also asserts that

"[a]s a result of earth material and trees being removed from the channel, so as to restore a clear channel, there was no longer an adverse affect on efficiency, or an undue restriction in the capacity, of the floodway at the site." `Id.` at ¶ 8. In fact, in an administrative law matter before the Natural Resources Commission of the State of Indiana, the administrative law judge accepted the agreement of parties IDNR and Wal–Mart that the "violations cited in the DNR Complaint against Wal–Mart [obstruction of Wilson Creek] had been properly abated," thus obviating the necessity of hearing evidence on the issue. Report, Findings of Fact, and Nonfinal Order of the Administrative Law Judge, *In re Department of Natural Resources v. Wal–Mart Stores, Inc.,* 96–183W, ¶ 31, attached as Exhibit A to Defendant C.E.S.O., Inc.'s Motion to Supplement its Motion for Summary Judgment with a Relevant Decision from the Indiana Natural Resources Commission.

However, taking Plaintiffs' supported facts as true, there is a genuine issue of material fact as to whether Wilson Creek remained obstructed after September of 1996. Carl D. Walker, a professional engineer and surveyor, attests that "it is my opinion, within a reasonable degree of engineering certainty, that fill material extends within the floodway limits of Wilson Creek in various amounts for a stretch of approximately 1,600 feet." Walker Aff., 4/12/2000, ¶ 9. He continues, stating that "fill material from the landslide area currently extends into the channel area of Wilson Creek for approximately 365 feet." *Id.* Walker allegedly visited the site, studied data collected by field surveyors at the site, and examined documents provided by the litigants.[5] *Id.* at ¶¶ 3–9. This expert

---

**5.** Defendant CESO, and thereby Wal–Mart, argues that Walker's affidavit should be discounted because it refers to documents not attached to the affidavit. CESO Reply at 8–9 (citing Fed.R.Civ.P. 56(e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or

served therewith.")). On this basis, Defendant CESO's affidavits should also be regarded as being of little value because Oakes' affidavit attests to information contained in the very same documents, such as the IDNR application, FW 17332, for permission to relocate a portion of the floodway and the com-

opinion creates a genuine issue of material fact as to whether Wilson Creek remains obstructed.

Wal–Mart offers two arguments for the proposition that even if Wilson Creek remains constricted, the constriction is not the cause of the floods affecting the Heaths' property. First, Wal–Mart contends that flooding of the property occurred prior to the Wal–Mart construction. Wal–Mart Memo. at 3. As noted previously in the summary of facts portion of this entry, the Heaths admit that flooding was a problem prior to the building of the Wal–Mart store. Heath Depo. at 14–15. The Heaths claim, however, that prior floods were flash floods, which were much shorter and caused less damage than the floods they have experienced since the Wal–Mart store was built. Heath Depo. at 14–15. Plaintiffs are not engineers, but lay testimony on this issue suffices to defeat a summary judgment motion. *See Gasway,* 526 N.E.2d at 1202 (accepting plaintiff's testimony about flood history of property and neighbor's testimony about history of natural watercourse at issue).

Next, Wal–Mart argues that unusually heavy storms and high water levels in the Ohio River in 1996 and 1997, rather than an obstruction in Wilson Creek, are responsible for the floods suffered by the Heaths. Wal–Mart Memo. at 5. While Plaintiffs acknowledge that rainfall was heavy in those years, they offer three items of evidence which create a genuine issue of material fact as to whether the alleged obstruction in Wilson Creek caused the flooding of their farm. First, they offer expert testimony that the obstruction in Wilson Creek is responsible for flooding the Heaths' property. Walker, based on the survey performed by his engineering and surveying firm and on data provided by the litigants, opines that "fill material in the landslide area adversely effects the efficiency and reduces the capacity of the

Wilson Creek floodway." Walker Aff. ¶¶ 7, 9, and 12. James R. Huitger, an associate of Savage, Walker & Associates, Inc., connects this finding of reduced capacity of Wilson Creek to the flooding experienced by the Heaths. Huitger Aff., ¶ 4 ("The placement of fill and other materials by Wal–Mart in the Wilson Creek floodway has resulted in an increase in the water surface elevations of Wilson Creek which caused adverse effects to occur on the property of Terry and Martha Heath in the presence of severe local storms."). Defendant Wal–Mart attempts to keep out the testimony of Huitger by filing a Motion to Strike the Affidavit of James R. Huitger ("Wal–Mart Mot. to Strike"). Citing Fed. Civ. R.P. 56(e), Wal–Mart claims that Huitger's affidavit does not show that it was made on personal knowledge and does not provide facts which would be admissible in evidence to supports his conclusion. Wal–Mart Mot. to Strike at 2. We reject these arguments. In the first two paragraphs of his affidavit, Huitger notes that he works for Savage, Walker & Associates, Inc. and that he has been actively involved in the firm's project with regard to this case. Huitger Aff., ¶¶ 1–2.

As to Wal–Mart's second objection, the Court agrees that a more developed affidavit from Mr. Huitger would be useful; however, the expert's affidavit "provides sufficient 'hint of inferential process' to pass muster under Fed.R.Civ.P. 56(e)." *American Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455, 1462 (7th Cir.1996) (quoting *Mid–State Fertilizer Co. v. Exchange Nat. Bank of Chicago,* 877 F.2d 1333, 1339 (7th Cir.1989)). The Seventh Circuit has found that for purposes of surviving summary judgment motions, expert testimony stating a conclusion is acceptable "only to the extent it is reasoned, uses the methods of the discipline, and is founded on data." *Lang v. Kohl's Food Stores, Inc.,* 217 F.3d 919, 924 (7th Cir.2000). Hu-

---

plaint filed against Wal–Mart by the IDNR. Oakes' affidavit also fails to include these papers. We conclude that Defendants have

waived any arguments concerning the authenticity or admissibility of the documents.

itger notes the fact that fill and other materials were placed in the Wilson Creek floodway. Huitger Aff., ¶ 4. He notes that the water level of Wilson Creek was raised as a result and then concludes that the Heaths' property suffered flooding because of this increase in the water level. *Id.* Walker's affidavit details the information collected and analyzed by Savage, Walker & Associates, Inc., Walker Aff., 4/12/2000, ¶¶ 7–8, and Huitger affirms that he worked on the project, presumably utilizing proper methodology. Huitger Aff., ¶ 2. Huitger cites the fact that fill obstructed the Wilson Creek floodway and supplies his reasoning process leading to the conclusion that the fill caused the increase in the water level, which caused the flooding. *See generally, Mid–State*, 877 F.2d at 1339 (requiring experts to provide facts and reasons for their conclusions in order to survive summary judgment). In addition, Huitger apparently rejected another possible cause of the Heaths' flooding problem-unprecedented rainfall and peak levels of the Ohio River-because he affirms, based on data from the Army Corps of Engineers, that the flooding in 1997 was not as severe as Wal–Mart alleges. Huitger Aff., ¶ 3. Accordingly, we deny Wal–Mart's Motion to Strike the Affidavit of James R. Huitger.

Another fact undermines Wal–Mart's argument that heavy rainfall in 1996 and 1997 is responsible for the flooding, rather than the obstruction in Wilson Creek. Plaintiffs have presented evidence that their farm also flooded in 1998. The Heaths state that hay crop losses occurred in 1998 due to flooding to such an extent that they had to buy hay from a neighbor to make up for the loss. Pls.' Ans. to Interrogs. 3–4. Wal–Mart has offered no evidence concerning 1998 rainfall and has not alleged that it was severe. Wal–Mart's theory thus does not account for the flooding in 1998. Accordingly, Plaintiffs have created genuine issues of material fact about the obstruction of Wilson Creek as a cause of the flood loss they have suffered.

The Plaintiffs offer one final piece of evidence to show that the obstruction in Wilson Creek is responsible for the flooding they have experienced. Terry Heath testified that the Heaths' farm did not flood in the same manner prior to the construction of WalMart as it did afterwards. Heath Depo. at 14–15. Defendant Wal–Mart discounts this evidence as a mere "assumption that flooding occurred subsequent to the construction by Wal–Mart" and argues that it is not evidence that the flooding was *caused* by the Wal–Mart construction. Wal–Mart Memo. at 5. Wal–Mart's argument fails. In *Gasway*, the court specifically credited such evidence, noting that the plaintiff testified that his property had never flooded prior to the spring of 1986 and that the defendant had started leveling and filling at that same season. *Gasway*, 526 N.E.2d at 1202. The *Gasway* court found that from this evidence, it was proper for the trial court to conclude that Gasway's leveling activities caused the obstruction and award an injunction to protect the plaintiff's home from future flooding. *Gasway*, 526 N.E.2d at 1220–1204. A jury could decide not to believe Mr. Heath's testimony, but summary judgment to Wal–Mart is not available on this basis, especially in light of the other evidence offered by Plaintiffs. We therefore conclude that Wal–Mart's Motion for Summary Judgment must be denied.

*Liability of CESO and Cleveland*

The holdings in *Gasway* and *Trowbridge* make clear that CESO and Cleveland cannot be held liable under the same theory that would make Wal–Mart liable. Those cases permit a lower riparian *landowner* to be sued for obstructing a natural watercourse to the detriment of an upper riparian landowner. To overcome this legal obstacle, Plaintiffs argue that CESO and Cleveland can be found liable under *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49 (Ind.Ct.App.1993). In *Gray*, Westinghouse was held liable for the toxic waste it

contributed to a dump owned by the City of Bloomington. *Id.* at 53. The court generalized that a "party which *causes* a nuisance can be held liable, regardless of whether the party owns or possesses the property on which the nuisance originates." *Id.* (emphasis added). Following this broad language in *Gray*, Plaintiffs argue that in the course of designing the civil site plans for the Wal–Mart construction project, CESO improperly located the floodway boundary line. Pls.' Opp. to CESO and Cleveland Mot. at 3, ¶ 20. According to the Heaths, because the floodway boundary line was improperly located, fill and construction materials were placed in the floodway, eventually leading to the flooding of their property. *Id.* at ¶¶ 20–21. We disagree with Plaintiffs' interpretation of *Gray*.

 If Indiana's highest court had ruled on the issue before this court today, the proper action would be to follow its ruling. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The Supreme Court of Indiana has not decided whether a defendant without an interest in the property can be held liable for a nuisance originating on the property. In the absence of a ruling from the state's highest court, federal courts "must apply what they find to be the state law giving 'proper regard' to the relevant rulings of the other courts of the State." *Id.* We therefore must attempt to determine how the state's highest court would decide this issue. *Ross v. Creighton Univ.,* 957 F.2d 410, 413 (7th Cir.1992). Lower court rulings, of course, are persuasive authority in that determination. *Bosch,* 387 U.S. at 464–66, 87 S.Ct. 1776.

Taking literally the holding in *Gray* is further complicated by the maxim that if "general expressions go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821). In *Gray,* the plaintiff alleged that Westinghouse knew that the chemicals were toxic and that damage to the plaintiffs was a probable result, but continued with its chosen course of action anyway. *Gray,* 624 N.E.2d at 52. If the general statement set forth in *Gray* were carried to its logical conclusion, even the independent contractor unknowingly hauling Westinghouse's toxic waste to the dump could be held liable in nuisance should the toxic waste affect the dump's neighbors. This logic causes us to believe that the Supreme Court of Indiana would not find a defendant liable for nuisance in the absence of evidence that the defendant had a property interest in the land on which the nuisance originated or that the defendant was at least aware of the potential for its action to cause a nuisance.

 Here, no allegation has been made that CESO knew that it improperly positioned the floodway and that the failure would cause nuisance damage to Plaintiffs' property. Instead, Plaintiffs allege only that it was "CESO's responsibility, as the professional engineer, to properly locate and plot the edge of the 'floodway' of Wilson Creek so that no construction activities, including excavations and fill, shall occur in the floodway of Wilson Creek." Pls.' Opp. to CESO and Cleveland Mot. at 3, ¶ 18. Walker contends that the original floodway boundaries were improperly located, but he fails to show that CESO was aware of the potential problem of flooding. Walker Aff., 4/15/2000, ¶ 4. In fact, the only support Plaintiffs offer for their claim that CESO even drew the boundaries is Walker's assertion that the responsibility normally belongs to the site engineer. Plaintiffs have not alleged and supported with sufficient facts a basis on which they can withstand a motion for summary judgment regarding CESO's liability. For this reason, CESO's Motion for Summary Judgment is must be granted.

 The case is even more straightforward concerning Cleveland's lia-

bility for the alleged nuisance. The Heaths argue that faulty plans, placement of fill and construction materials in the floodway and poor excavation work all contributed to the obstruction in Wilson Creek about which they complain. Pls.' Opp. to CESO and Cleveland Memo. at 9. However, Plaintiffs have failed to present any evidence showing that Cleveland was responsible for any of these failures. Plaintiffs have not established that Cleveland placed fill and construction materials in the floodway. In addition, Mr. Ziegler, an officer for Cleveland, states that Cleveland's contract with Wal–Mart required it to construct the WalMart store "according to the architectural plans and specifications and site and grading plans provided by Wal–Mart Stores, Inc." Ziegler Aff., ¶ 3. Plaintiffs have not cited any facts from which the Court could draw the reasonable inference that Cleveland participated in drafting the allegedly faulty plans. Finally, Ziegler affirms that Cleveland subcontracted with Dineen Excavating to perform the excavation work necessary to construct the store. *Id.* at ¶ 5. As a matter of law, Cleveland cannot be held liable for problems in excavating and grading the site that may have occurred when an independent contractor, Dineen Excavating, actually performed the work. Generally, a contractee is not liable for the torts of an independent contractor unless the independent contractor is hired to do work which by its nature causes a nuisance. *Gray,* 624 N.E.2d at 53–54. In *Gray,* Westinghouse had hired an independent contractor to take toxic waste to a dump and could not escape liability simply because an independent contractor actually transported the waste. *Id.* at 54. In contrast, construction, even of Wal–Mart stores, is not an act which, by its nature, constitutes a nuisance. *See, Town of Speedway v. Dugan,* 228 Ind. 701, 94 N.E.2d 542 (1950) (construction of sewage treatment plant not a nuisance even though its eventual use as such might be a nuisance). Plaintiffs have not established that Cleveland caused the nuisance about which the Heaths complain. Therefore, Cleveland is entitled to prevail on its Motion for Summary Judgment.

### Conclusion

Wal–Mart's Motion for Summary Judgment is *DENIED* in part and *GRANTED* in part. In addition, Wal–Mart's Motion to Strike the Affidavit of James R. Huitger is *DENIED.* CESO's and Cleveland's Motions for Summary Judgment are *GRANTED.*